LeGierse & Co. v. F. M. Whitehurst.

(Case No. 5464.)

1. Notice—Innocent purchaser—A vendee having knowledge of the custom of his insolvent vendor to conduct business upon the credit system, is ordinarily put upon inquiry as to the situation and motives inducing a sale of his stock. But knowledge by the vendee that the vendor owns other property sufficient to satisfy all the liabilities, the size and character of his business would induce one to suppose existed at one time, is sufficient to silence inquiry into the character of the sale.

2. Same—A solvent debtor may make a fraudulent sale ; but, unless the seller be insolvent, the duty of inquiry by the purchaser does not necessarily arise from the character of the sale.

3. Same—See statement of case for facts held insufficient to charge a purchaser with notice of his vendor's fraudulent intention.

Appeal from Bell. Tried below before the Hon. B. W. Rimes.

This was an action for the trial of the right of property to the stock of goods of D. M. Barnwell.

On September 28, 1882, the goods were seized under attachment for the appellants. The appellee, Whitehurst, claimed to have bought the goods of Barnwell, on September 27, 1882, and that he was an innocent purchaser. The finding of fact by the court was as follows:

"I find as a fact that Whitehurst, claimant, purchased the goods in controversy of D. M. Barnwell on September 27, 1882, and the goods were seized on September 28, 1882, under attachment issued by plaintiff against the vendor, Barnwell. I further find that Whitehurst purchased the goods in good faith of Barnwell, and paid him an adequate consideration therefor, without either actual or constructive notice of the fraudulent intent of Barnwell in disposing of the goods."

Whitehurst testified "that he had talked to Barnwell, time and again, for about five weeks prior to the sale, about buying him out; that they were intimate friends; that since January 1, 1882, he had kept his money in Barnwell's safe; that they lived on adjoining lots in Temple; that he saw Blair (plaintiff's agent) in Temple several days before he bought the goods, and knew he was trying to make a settlement with Barnwell; that he (Whitehurst) had been in the store, off and on, for three or four weeks before the sale to see how the business was going on."

Barnwell testified "that he had been talking to Whitehurst for five or six weeks in reference to his going into business with him; that Whitehurst had agreed to lend him money; that an inventory of the goods had been taken by them five or six days before the sale, but none was taken at the time of the sale."

Blair testified "that Barnwell told him Whitehurst was a private partner, but afterwards denied it; that he was in Barnwell's store every day from September 25, trying to make a settlement of plaintiff's claim against him; that he saw Whitehurst then in and about the store several times; that he was satisfied that Whitehurst knew his business, because he was present and heard conversations he and Barnwell had in reference to his settlement with plaintiff."

*W. S. Holman*, for appellants, cited: Block *v.* Sweeney, Tex. Law Rev., vol. 5, p. 184; Traylor *v.* Townsend, 61 Tex., 144.

No brief on file for appellee.

Robertson, Associate Justice.—If the stock of merchandise sold to Whitehurst was the only property subject to his debts owned by Barnwell at the time of the sale, the necessary effect of the sale would be to place him in a position to defy his creditors. The custom of merchants, in carrying on such business as Barnwell's, to buy upon credit, would ordinarily give to the purchaser of his goods notice that he was, more or less, in debt at the time of the sale. If, therefore, Barnwell was, in fact, insolvent, such a sale as that made to Whitehurst would be well calculated to arouse suspicion, and to excite a prudent purchaser to inquire as to the situation and motives inducing the sale. Blum *v.* Simpson, 66 Tex., 84.

On the other hand, if the seller has plenty of other property to satisfy all the liabilities the size and character of his business would induce any one to suppose he would owe at any one time, the effect of the sale of his stock in trade is not to place him in a position to defraud his creditors; and the knowledge of this situation on the part of the purchaser would silence inquiry.

Without proof of the insolvency of Barnwell, there was no proof of the occasion for inquiry on the part of Whitehurst. If Barnwell was solvent, the sale might still be fraudulent; but, unless he was insolvent, the duty of inquiry by the purchaser would not necessarily arise from the character of the sale. There is much in this record to make us suspect that Barnwell was insolvent, but there is no proof of the fact, nor of any circumstances by which the fact could be considered established.

Without this evidence, we cannot determine that the finding of the court below, that Whitehurst was an innocent purchaser, is not sufficiently supported by the testimony. There is no distinct finding that reasonable diligence on the part of Whitehurst would not have discovered to him the fraudulent purpose of Barnwell, but this is fairly embraced in the general finding of fact.

As presented in this record, no error is disclosed in the judgment, and it must be affirmed.

Affirmed.

[Opinion delivered May 14, 1886.]