**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00066-CV**
_____

**IN THE ESTATE OF REDA BROWN ALLISON**

**On Appeal from the County Court**
**Jefferson County, Texas**
**Trial Cause No. 111894**

**MEMORANDUM OPINION**

This appeal arises from a dispute involving the administration of an estate and whether two tracts of property were owned by Reda Brown Allison when she died. We conclude that the Estate's claim that Reda owned the tracts when she died is barred by limitations. We further conclude that the doctrine of judicial estoppel does not prevent Reda's son, Albert Allison III (Ray), from showing that in 1988, a corporate entity in which he is the sole shareholder acquired the two disputed tracts from Reda and her husband, Albert Ray Allison Jr. (Albert). We reverse the trial court's order of February 8, 2016, based on our conclusion that the disputed tracts do not belong in Reda's estate.

1

Background

Reda died in October 2014. She was 81 years old at that time. In 2004, Reda executed the will admitted in the probate proceeding in which she divided her estate equally between her three children, Ray, Linda Lou Allison Miller, and Crystal Corrine Allison Harrington. Reda's will requested that her youngest daughter, Crystal, be named as the independent executor of Reda's estate. In January 2015, the county judge appointed Crystal as the independent executor of Reda's estate.

The dispute that is the subject of this appeal arose when Crystal filed an inventory that included two tracts of property (the disputed tracts), as properties that Reda owned when she died.[1] The parties also dispute whether Ray is entitled to retain

---

[1] The smaller of the disputed tracts contains approximately 23 acres and lies partly in Newton County and partly in Jasper County. The larger of the disputed tracts contains approximately 132 acres and lies in Newton County. While none of the parties have questioned our jurisdiction over the appeal, we note that because Reda died in Jefferson County, the county judge, as the presiding officer of Jefferson County's constitutional county court, exercised jurisdiction over the claims of Reda's estate to the tracts, even though those tracts are not located in Jefferson County. We also note that Jefferson County has no statutory probate court, and that none of the parties asked the county judge to transfer the dispute to a county court at law. *See* Tex. Est. Code Ann. § 31.002(a)(5), (b)(1) (West 2014) (including in "a matter related to a probate proceeding" actions for "trial of title to real property that is estate property"), § 32.001(a) (West 2014) (granting jurisdiction over probate proceedings to the court exercising original probate jurisdiction over "all matters related to the probate proceeding"), § 32.002(b) (West 2014) (providing that in counties that do not have a statutory probate court, but in which they do have county courts at law exercising probate jurisdiction, the county court and county court at law have concurrent original jurisdiction unless otherwise provided by law), § 32.004(a) (West 2014) (requiring that a county judge in a county where a county court at law exercises probate jurisdiction to transfer the proceeding to the county

2

several payments that he collected from Billy Rawls after Reda's death, which were based on an agreement that Reda made with Rawls in 2008 to sell the smaller of the disputed tracts to him.

After the county judge approved the proposed inventory for Reda's estate, Crystal filed a motion requesting that the county judge order the tracts delivered to the Estate so they could be sold. Crystal's motion alleges that her parents, Albert and Reda, transferred the disputed tracts to "AFCI, Inc. in order to shield [the tracts] from IRS leavy (sic) or collection measures."

Ray and Linda filed a response and opposed Crystal's motion on the basis that the disputed tracts were not owned by Reda when she died. In their response, Ray and Linda asserted that in 1988, Albert and Reda deeded the tracts to AFCI, that the acronym AFCI referred to in the deeds to the disputed tracts is The Allison Financial Corporation, Inc., that Ray "was and remains the sole shareholder of AFCI, Inc.," and that the disputed tracts, which were deeded to AFCI, were not properties that belong in Reda's estate. Additionally, Ray and Linda's response raises a statute of limitations defense to the Estate's claim that the disputed tracts belonged in Reda's estate. As to the payments that Rawls made to Ray on the smaller tract after Reda's death, the response alleges that after learning of Reda's decision to sell the smaller

court at law if a party files a motion requesting that the proceeding be transferred to the county court at law).

3

tract to Rawls, Ray agreed to honor his mother's agreement with Rawls. Ray's response indicates that the proceeds that he received from Rawls after Reda's death rightfully belonged to him as the beneficial owner of AFCI, which owns the properties.

In January 2016, the county judge conducted an evidentiary hearing on the claims of the Estate to the disputed tracts. The evidence admitted during the hearing includes certified copies of the deeds to the disputed tracts. The deeds contain Albert's and Reda's notarized signatures. Each deed reflects that it was duly recorded in the appropriate county office where that tract is located. The parties did not dispute the facial validity of the deeds to the disputed tracts in the hearing, nor do they contest the facial validity of the deeds in the appeal.

Following the hearing, the county judge reduced his findings and conclusions to writing. The county judge found that AFCI was the intended grantee to the disputed tracts. The Estate does not claim that Reda and Albert were tricked into conveying the tracts to AFCI. Additionally, the Estate does not contest Ray's claim that he is the sole shareholder of AFCI.[2] *See* Tex. R. App. P. 38.1(g) (allowing the

---

[2] Crystal, as the executor of Reda's estate, alleged that her parents believed they were shareholders in the entity to which they conveyed the disputed tracts. However, AFCI's stock ledger was one of the exhibits admitted into evidence during the hearing conducted to resolve whether the tracts were properties that belonged to Reda's estate. The ledger shows that AFCI issued only one share of stock, and that the share was issued to Ray. Ray's stock certificate, another exhibit admitted into evidence during the hearing, does not show that Ray ever transferred his share in

4

appeals court in a civil case to accept as true the facts stated in the "Statement of Facts" section of the appellant's brief unless the facts stated in that section are contradicted by another party).

The evidence admitted in the hearing reflects that Reda's husband, Albert, died in 2001. Reda was named the executor of his will. Exhibits admitted during the hearing include Albert's will and the inventory of the assets in his estate. The inventory filed in Albert's estate does not show that Albert's estate claimed ownership of the disputed tracts. It also does not identify any shares in AFCI as property that belonged to Albert when he died. Ray and Linda rely on the inventory that was filed in Albert's estate to support their argument that Albert and Reda were aware they conveyed the disputed tracts to AFCI before they died.

In support of the Estate's claim that Reda thought she owned the tracts when she died, the Estate relies on evidence showing that in 2008, Reda sold the smaller of the disputed tracts to Rawls. Under Reda's agreement with Rawls, Rawls agreed to pay Reda approximately $38,000 to purchase the smaller of the disputed tracts. The purchase agreement, which bears Rawls' signature, shows that he paid $5,000 toward the $38,000 purchase price in 2008, and that he agreed to pay the remaining

AFCI to anyone. The evidence in the hearing also shows that AFCI forfeited its right to do business in 1989 after it failed to file a state franchise tax return, and nothing in the record shows that AFCI attempted to have its right to conduct business in Texas restored after 1989.

5

balance in monthly installments starting in February 2008. Additionally, the purchase agreement required Rawls to pay the property taxes on the tract, and required Reda to furnish Rawls with a deed to the tract "when contract terms have all been met."[3] Reda's 2012 federal tax return reflects that Reda reported interest on the sale of the smaller tract on her personal return. Reda's return identifies the interest that Reda received in 2011 on the transaction with Rawls as "Billy Rawls SFM." The tax form on the return defines "SFM" as "seller-financed mortgage."

During the hearing on the Estate's motion, Crystal argued Albert and Reda continued to treat the disputed tracts as their own after the tracts were conveyed to AFCI. The evidence in the hearing shows that Albert and Reda continued to operate the larger tract as a farm. Based on the way her parents treated the tracts after 2008, Crystal claimed that Albert and Reda never intended to alienate the tracts from their estates. Following the hearing, the county judge found that the disputed tracts belonged to the Estate, in fee simple.[4] Additionally, the county judge's order

---

[3] The records Reda kept reflect that Rawls did not make regular monthly payments toward his purchase of the tract. Ray testified that after Reda died, he began collecting the payments that Rawls was obligated to make under the agreement that he made with Reda.

[4] We note that Crystal did not file the Estate's suit as a trespass to try title action. However, Ray and Linda also never objected to Crystal's failure to comply with the rules of civil procedure that apply to trespass to try title claims. *See* Tex. R. Civ. P. 783-809 (Rules applying to trespass to try title actions). Additionally, the county judge did not require the parties to comply with section 22.001 of the Texas Property Code to resolve whether the tracts were properties owned by Reda's estate.

resolving the dispute recites that the Estate's title in the disputed tracts "is forever quieted against any and all claims or demands of The Allison Financial Corporation, Inc., a/k/a/ AFCI, Inc., Albert Ray Allison, III, individually and/or Linda A. Miller, individually[.]"

With respect to the money that Ray collected from Rawls on the smaller of the disputed tracts, the county judge's order required Rawls to make all future payments on the tract he purchased to Crystal, as the executor of Reda's estate. The order also required Ray to reimburse Reda's estate for the installment payments he began collecting on the smaller tract after Reda died. Ray and Linda appeal from the county judge's order concluding that the disputed tracts were owned by Reda when she died.

---

*See* Tex. Prop. Code Ann. § 22.001 (West 2014). In their appeal, Ray and Linda have not argued that the trial court erred by failing to try the case as a trespass to try title action. Consequently, we resolve the issues in the appeal without the benefit of the formal pleading rules and record that would have been created had the dispute been tried as a trespass to try title action. *See Land v. Turner*, 377 S.W.2d 181, 183 (Tex. 1964) (noting that "[t]o recover in trespass to try title, the plaintiff must recover upon the strength of his own title"). Given the fact the case was not handled as a trespass to try title action, we do not intend our opinion to imply that any of the parties provided the court with evidence that is sufficient to allow a court to trace title to the disputed tracts to the sovereign. *Compare* Tex. Prop. Code Ann. § 22.001(a) (providing that "[a] trespass to try title action is the method of determining title to lands, tenements, or other real property"), *with* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2015) (permitting resolution of boundary disputes by declaratory judgment actions if the sole issue is the proper boundary between adjoining properties).

Analysis

*Waiver*

The county judge failed to address in his findings whether limitations barred the claims made by Reda's estate that Reda owned the property when she died. On appeal, the Estate argues that Ray and Linda failed to properly raise limitations as a defense to its claim that the disputed tracts were owned by Reda when she died. We address the Estate's waiver argument before we address the issues that Ray and Linda raise in their appeal.

Limitations is an affirmative defense that must be affirmatively pled as a defense to another party's claims. Tex. R. Civ. P. 94 (Affirmative Defenses). The pleadings and brief that Ray and Linda filed in the trial court raise statute of limitations defenses. A response they filed to the Estate's motion asking that the county judge order the disputed properties delivered to the Estate raises limitations as a defense to the Estate's request. Additionally, following the hearing, and before the county judge decided the dispute, Ray and Linda filed a brief discussing their statute of limitations defenses in detail. By awarding the tracts to Reda's estate, the county judge implicitly rejected Ray and Linda's claim that the Estate's claims were barred by limitations. Tex. R. App. P. 33.1(a)(2)(A) (providing that an error is preserved if the complaint is presented in a manner sufficient to make the trial court

8

aware of the complaint and the trial court ruled on the request, either expressly or by implication). We hold that Ray and Linda did not waive their limitations defense.

*Limitations*

Next, we address whether the claims of Reda's estate to the disputed tracts are barred by limitations. To determine whether the Estate's claims were filed within the period proscribed by the relevant statutes of limitation, we must determine when Reda's claims to the tracts accrued. The record shows that Reda and Albert executed the deeds to the disputed tracts in April 1988. The record also shows that the Estate never claimed that any of the signatures on the deeds were forged or that the deeds were not duly recorded.

Generally, the question of when a claim accrues is decided as a question of law. *Town of Dish v. Atmos Energy Corp.,* 519 S.W.3d 605, 609 (Tex. 2017). "A cause of action accrues 'when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur.'" *Id.* (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)). In this case, the county judge's written findings state that the tracts were deeded to AFCI "in order to shield" them "from tax levy or collection measures of the United States Internal Revenue Service." None of the parties have challenged that finding in the appeal. Additionally, the Estate has not claimed that Reda was unaware of the nature of the transaction involving the disputed tracts. In its brief, the

9

Estate alleges that conveying the disputed tracts to AFCI "was a fraudulent and sham transaction designed to shield the [two tracts] from possible IRS levy." Under the circumstances shown on this record, which indicates that Reda was a party to the alleged fraud, we conclude that Reda's claims to avoid the deeds accrued when she executed the deeds. *See Cosgrove v. Cade*, 468 S.W.3d 32, 39 (Tex. 2015) (explaining that the grantors of a deed are charged with notice of the contents of their deed on execution).

Had Reda filed a claim seeking to void the deeds while she was alive, her legal and equitable claims would have been subject to four-year statutes of limitation.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (West 2002) (providing a four-year period in which to bring a claim for fraud), § 16.051 (West 2015) (providing that every action for which no express period applies "must be brought not later than four years after the day the cause of action accrues"); *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617-18 (Tex. 2007) (holding that actions seeking to set aside voidable deeds are required to be filed no later than four years after the cause of

---

[5] We assume without deciding that an alleged fraudfeasor has a right to challenge the validity of the allegedly fraudulent instruments that she signed. In their brief, Ray and Linda claimed that Reda did not have standing to claim that the deeds to the tracts were voidable. Nonetheless, we need not reach the standing issue to dispose of the appeal. *See* Tex. R. App. P. 47.1 (allowing an appellate court to address only those issues needed to finally dispose of the appeal).

action accrues).[6] Fraud claims,[7] whether brought pursuant to the statute for fraud in real estate transactions or at common law, and whether characterized as legal or equitable claims, are also governed by four-year statutes of limitation. *See* Tex. Bus. & Com. Code Ann. § 27.01 (West 2015) (providing cause of action for frauds that involve real estate transactions); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (providing a four-year period from the date of accrual to file a cause of action for

---

[6] We note that the pleadings filed by Reda's estate did not allege that Ray or AFCI agreed to hold the disputed tracts in trust, nor did the Estate claim that an enforceable trust agreement existed that governed Reda's rights to the tracts. *See* Tex. Prop. Code Ann. § 112.004 (West 2014) (providing that a trust agreement creating a trust that holds real or personal property is enforceable only if there is written evidence of the trust's terms bearing the signature of the settlor or the settlor's authorized agent). No evidence was introduced in the hearing showing that Albert, Reda, or Crystal believed that AFCI agreed to hold the disputed tracts in trust for the benefit of Reda, Albert, or their children. At the beginning of the hearing, the county judge made a comment that possibly reflects the court viewed the circumstances related to the property as one involving a trust. Nonetheless, if the county judge's conclusion that Reda and Albert did not intend to permanently alienate their ownership of the tracts implies that a trust existed governing the tracts, such a finding and conclusion is not supported by pleadings or evidence proving the existence of a written trust. Had the Estate attempted to introduce testimony about an alleged oral trust in the hearing, which it did not, the statute of frauds that applies to trusts makes oral trust agreements unenforceable in the absence of any proof that a written trust agreement ever existed. *See id.*

[7] Ray and Linda have not challenged the Estate's fraud claims on the basis that Reda's claims did not survive her death. Nevertheless, we note that at common law, fraud claims involving real estate are generally considered to have survived the injured party's death. *See Vial v. Gas Solutions, Ltd.*, 187 S.W.3d 220, 225-28 (Tex. App.—Texarkana 2006, no pet.) (concluding that the heirs of the defrauded party had standing to file a claim seeking to recover an interest in property based on a claim for fraud).

11

fraud); *Ford*, 235 S.W.3d at 618 (providing that Texas law with respect to challenging the validity of a deed "is well settled that once limitations has expired for setting aside a deed for fraud, that bar cannot be evaded by simply asserting the claim in equity"). Consequently, absent the application of a rule deferring limitations beyond 1992, Reda's claims, had she made any, seeking to avoid the validity of the deeds she signed, would have been barred well before 2014.[8] Tex. Civ. Prac. & Rem. Code Ann. §§ 16.004(a)(4), 16.051.

Crystal argues that limitations on Reda's claims should be deferred because she did not discover the allegedly fraudulent scheme concerning the disputed tracts until after she was appointed as the executor for the Estate. However, "Texas courts have refused to apply the discovery rule to claims arising out of probate proceedings [] even in the face of allegations of fraud." *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997). And, even if Reda did not know who actually owned AFCI when she executed the 1988 deeds, "[a] record titleholder's ignorance of what [she] owns does not affect the running of limitations." *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 198 (Tex. 2003). We conclude that the deeds put Reda on notice that she was conveying the tracts to a corporate entity, and there was no evidence introduced in

---

[8] Given our conclusion that Reda's claims under the facts and circumstances in this case accrued on April 26, 1988, her last day to file claims to avoid the validity of the deeds she signed was April 26, 1992.

the hearing showing that Ray misled Reda about his ownership of AFCI. *See Cosgrove*, 468 S.W.3d at 38-39 (explaining that without showing fraud, property owners "may not claim a failure to understand what they were signing as grounds for avoiding the transaction").

In its brief, Reda's estate relies primarily on *S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996), *Computer Associates International v. Altai, Inc.*, 918 S.W.2d 453 (Tex. 1996), and *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806 (Tex. 1979), to support its argument that limitations should be deferred until Crystal learned of the allegedly fraudulent scheme involving the disputed tracts. However, these cases do not support the Estate's argument that it had the right to pursue claims on Reda's behalf that would have been barred by limitations before she died.

For example, *S.V. v. R.V.* offers no support for the Estate's claim that an estate can pursue a stale claim. 933 S.W.2d 1. In *S.V.*, S.'s child R. relied on the discovery rule in an effort to avoid S.'s limitations defense to his daughter's claims that he had negligently sexually abused her when she was a minor. *Id.* at 3. The opinion addresses R.'s claim that she repressed the memories involving her father's sexual assaults. *Id.* at 8, 25. Ultimately, the Court held that because R.'s injury was not inherently undiscoverable, the discovery rule did not apply to R.'s claims. *Id.* Reda's claims, like R.'s, were not inherently undiscoverable while Reda was alive. In our opinion, the discussion in *S.V. v. R.V.* rejecting the application of the discovery rule

13

supports Ray and Linda's argument that the discovery rule does not apply to the Estate's claims.

*Computer Associates* also provides no support for the Estate's argument that the discovery rule applies to its claims. 918 S.W.2d 453. In *Computer Associates*, the Texas Supreme Court rejected Computer Associates' claim that the discovery rule applied to its claims. *Id*. at 458. The case did not involve claims pursued by a testator's estate, and the general discussion in *Computer Associates* concerning when the discovery rule applies does not address whether it applies when the testator is allegedly a knowing participant in an allegedly fraudulent scheme. *Id*. at 455-58.

*Stonecipher* is distinguishable because the Court in that case held the discovery rule applied where the testator was the victim of a fraudulent scheme designed to prevent the testator from learning that a defendant the testator sued, when the testator was alive, owned property on which the testator had the right to execute to collect a judgment on behalf of the testator's estate. 591 S.W.2d at 807. In *Stonecipher*, no claim was made that Stonecipher had been a party to the alleged fraud. *Id*. Because Stonecipher was the victim of the fraud, the Texas Supreme Court held that the claims of his estate for the injury that occurred to him were subject to the discovery rule, and the Court remanded the case for trial to allow Stonecipher's estate to prove that Stonecipher, while he was alive, exercised reasonable diligence

14

to discover whether the individuals against whom he obtained a judgment had assets. *Id*. at 810.

Generally, Crystal argued in the probate hearing that her parents did not fully realize all of the consequences attendant to conveying the disputed tracts to AFCI. Nonetheless, given both Albert's and Reda's deaths, the parties cannot establish whether Albert and Reda were aware that the tracts would no longer be part of their estates after deeding them to AFCI. While it is possible that Albert and Reda did not realize all of the ramifications attendant to their decision to sign the deeds, Crystal's effort linking suspicion on suspicion does not replace the legal requirement that a party prove its claims. *See Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993) (noting that "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence").

Reda's estate argues that the dates relevant to the accrual of Reda's claims to the disputed tracts revolve around when Crystal as the executor of Reda's estate learned that the tracts were transferred to a corporation that her parents did not own. However, nothing in the Civil Practice and Remedies Code indicates that the Legislature intended to allow a claim that was already barred by limitations before the decedent's death to be revived upon the decedent's death. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.062 (West 2015) (suspending limitations in case of an individual's death during a period to allow the appointment of an administrator or

executor up to a maximum period of twelve months); *see generally Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992) (explaining that because survival actions are wholly derivative of the decedent's rights, a decedent's action that "would have been barred by limitations had it been asserted immediately prior to his death" when based on the same alleged wrong "is likewise barred"). The Estate has not shown that the Estate had the legal right to pursue claims that were time-barred in 1992, twenty-two years before the date of Reda's death.

In conclusion, the circumstantial evidence surrounding the execution of the deeds was legally insufficient to establish that Ray engaged in a pattern of conduct designed to mislead his parents into believing that they retained legal title to the disputed tracts after signing the deeds. We conclude that the four-year limitations period expired on Reda's statutory and common law fraud claims in 1992, well before Reda died in 2014. We further conclude that the discovery rule does not apply to the Estate's claims because the alleged injury to Reda was not inherently undiscoverable. Because Reda's claims were barred by limitations before she died, the claims Reda's estate made to the disputed tracts were also barred.

*Payments on tract purchased by Rawls*

Because the claim made by Reda's estate to the smaller of the disputed tracts was barred by limitations, the Estate's claim that Ray was not entitled to the payments Rawls made toward his purchase of the smaller tract after Reda died also

16

has no merit. Although Reda no longer owned the smaller of the disputed tracts when she deeded it to Rawls, Ray's testimony in the probate hearing indicates that he ratified Reda's agreement by accepting the payments that Rawls made toward his purchase of the tract after he learned that Reda signed a contract to sell the tract to Rawls. As AFCI's sole shareholder, and because AFCI was the owner of the smaller tract according to the deeds that were in evidence, Ray had the right to ratify Reda's agreement with Rawls.[9] *See Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756-57 (Tex. 1980) (explaining that "[r]atification may occur when a principal, though he had no knowledge originally of the unauthorized act of his

---

[9] The Estate did not challenge Ray's standing in the probate court or in the appeal to assert claims on behalf of AFCI. AFCI is an entity that was not a party to the proceedings below, and is not a party to the appeal. Nevertheless, the Texas Estates Code allows "[a]ny interested person" to file a written complaint in probate court setting forth why an inventory to an estate is erroneous or unjust. Tex. Est. Code Ann. § 309.103(a)(1) (West 2014). The term "interested person" is broadly defined by the Estates Code to include, among others, those "having a property right in or claim against an estate being administered[.]" Tex. Est. Code Ann. § 22.018(1) (West 2014). As AFCI's sole shareholder, Ray is the beneficial owner of AFCI's assets since its charter was forfeited. *See Regal Constr. Co. v. Hansel*, 596 S.W.2d 150, 153 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (explaining that shareholders of a corporation whose charter has been forfeited may prosecute or defend actions involving corporate property because "legal title to the assets remains in the corporation, but the beneficial title to the assets of the corporation is in the stockholders"). As the beneficial owner of AFCI's interest in the disputed tracts, we conclude that Ray had the right to defend AFCI's interest in the disputed tracts. *See Humble Oil & Refining Co. v. Blankenburg*, 235 S.W.2d 891, 894 (1951). Nonetheless, we further note that because the suit was not filed as a trespass to try title claim, we express no opinion about the validity of the deeds Ray executed in December 2014 as AFCI's sole shareholder conveying the disputed tracts away from AFCI.

agent, retains the benefits of the transaction after acquiring full knowledge"). We hold that the Estate failed to prove that it was legally entitled to receive any of the money that Ray received from Rawls toward his purchase of the smaller tract. We further hold that the Estate has no claim that Reda had a right to collect the balance of the money that Rawls owes under the agreement he made to purchase the smaller of the disputed tracts.

*Judicial Estoppel*

"The doctrine of judicial estoppel 'precludes a party from adopting a position inconsistent with one that it maintained successfully in an earlier proceeding.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 Roy W. McDonald & Elaine G. Carlson, *Texas Civil Practice* § 9.51 (2d ed. 2003)). In this case, the county judge applied the doctrine to prevent Ray and Linda from relying on the duly recorded deeds that reflect the disputed tracts were conveyed to AFCI. On appeal, Ray and Linda challenge the trial court's conclusion that judicial estoppel applies to their claims.

While the reasons the county judge concluded that judicial estoppel applied to Ray's and Linda's claims are not entirely clear, it appears the judge based the court's conclusion largely on schedules that Ray filed in connection with his personal bankruptcy. The evidence in the hearing shows that Ray filed for bankruptcy in 2006. On the schedule listing his assets in bankruptcy court, Ray

represented that his shares of AFCI had a "par value" of $0.00. The county judge apparently viewed this representation as tantamount to a representation that AFCI had no assets, implying that the representation of par value reflected that AFCI did not claim to own the disputed tracts. However, the schedules do not state that AFCI did not own the disputed tracts, and the assets and liabilities of AFCI are not listed in the bankruptcy schedules that were filed in the probate proceeding that is the subject of the appeal.

A representation that a corporation has a stated par value, whether it is $0.00 or some other number, does not reflect whether it has assets. With respect to stock, the term "par value" is the value assigned to the stock in the company's corporate charter. *See* NEW OXFORD AMERICAN DICTIONARY 1278 (3d ed. 2010) (defining the term "par value" as "the nominal value of a bond, share of stock, or a coupon as indicated in writing on the document or specified by charter").Therefore, listing of a stock's par value does not show whether or not the company has any assets. Moreover, none of Ray's bankruptcy filings in evidence in the probate proceeding represented that AFCI did not own the disputed tracts. The Estate also did not prove that Ray was required to identify the assets held by AFCI on the schedules that he filed of his assets, but the schedules do show that Ray owns stock in AFCI.

The county judge also apparently concluded that judicial estoppel applied in this case because Ray failed to list AFCI as a "single asset real estate" business on

his bankruptcy schedules. In our opinion, the evidence presented in the hearing failed to demonstrate that AFCI was required to be listed in Ray's bankruptcy filings as a "single asset real estate" business.

The Bankruptcy Code defines the term "single asset real estate" as "a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C.S. § 101(51B) (LEXIS through Pub. L. No. 115-60). When Ray filed for bankruptcy, the evidence before the county judge proved that AFCI owned the two disputed tracts. Therefore, the evidence before the county judge showed that AFCI owned more than a single tract of property. Additionally, the evidence did not show that the disputed tracts were ever operated by AFCI as one project; instead, the evidence shows that one of the tracts was operated by Ray's parents as a farm at that time. Moreover, the evidence presented in the hearing does not address whether AFCI's operation of the disputed tracts produced substantially all of Ray's gross income when Ray filed for bankruptcy.

We hold the trial court erred by ruling that judicial estoppel prevented Ray and Linda from claiming that AFCI owned the disputed tracts.

## Conclusion

The evidence does not support the county judge's conclusion that the disputed tracts were owned by Reda's estate when she died. Instead, the evidence admitted in the hearing conclusively proved that Reda did not own the tracts on the date of her death. We reverse the trial court's order of February 8, 2016, and we render judgment that the disputed tracts are not part of Reda's estate. We further hold that the Estate, as a matter of law, has no reimbursement claim for the payments that Rawls made to Ray toward Rawls' agreement to purchase the smaller of the disputed tracts. Finally, we hold that the trial court erred in ordering Rawls, who was not a party to the proceedings, to make all of the remaining payments under his agreement to purchase the smaller tract to Crystal, as the executor of Reda's estate. *See* Tex. R. App. P. 43.2(c).

REVERSED AND RENDERED.

_____

HOLLIS HORTON
Justice

Submitted on July 5, 2017
Opinion Delivered October 19, 2017

Before Kreger, Horton and Johnson, JJ.

21