**AFFIRM in Part, REVERSE in Part, and REMAND; Opinion Filed August 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00370-CV

### LAURA WIEMER, Appellant
### V.
### VINCENT HANS WIEMER, TRINA RACHELLE WIEMER, ALEXICON, INC., ROBBIE D. STRAIT, AND DOUGLAS KITCH, Appellees

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-04442-2015**

## MEMORANDUM OPINION

Before Justices Myers, Boatright, and O'Neill[1]
Opinion by Justice Boatright

Appellant Laura Wiemer (Laura) appeals three trial court orders granting take-nothing summary judgments in favor of appellees (1) Vincent Hans Wiemer (Vincent), (2) Trina Rachelle Wiemer (Trina), and (3) Alexicon, Inc., Robbie D. Strait, and Douglas Kitch (the Alexicon Defendants). For the reasons discussed below, we reverse the trial court's orders granting summary judgment to Vincent. We reverse in part and affirm in part the order granting summary judgment to Trina. And we affirm the trial court's order granting summary judgment to the Alexicon Defendants.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

# BACKGROUND

Laura and Vincent were divorced in Oklahoma after a ten-year marriage; they entered into a Property Settlement Agreement incident to their divorce in 2009. The agreement provided, among other things, that Laura was entitled to payments of approximately $600,000 and that Vincent was awarded their Alexicon stock. Vincent owned Alexicon together with Strait and Kitch.

In October 2011, Vincent stopped paying child support and alimony. The same month, Vincent, Strait, and Kitch: (1) amended Vincent's employment agreement with Alexicon to include a reduction in salary, (2) executed a consent to the transfer of Vincent's stock to Trina, and (3) executed a software license agreement giving Strait and Kitch a perpetual non-exclusive, royalty-free license to company software.

Early in November, Laura filed her application for contempt in the Oklahoma court with continuing jurisdiction over the divorce and custody of their children. She cited Vincent's failure to pay child support and alimony for October and November. Less than two weeks later, Vincent and Trina divorced, executing an Agreement Incident to Divorce that transferred all the Alexicon stock to Trina. Vincent then filed a motion in the Oklahoma court seeking to modify his support payments based upon "permanent and substantial change in his income." Laura expanded her application to include unpaid property division payments and real estate payments required by the Property Settlement Agreement. And Vincent added his own application for contempt related to Laura's alleged interference with the sale of community property.

The Oklahoma litigation regarding Laura's application for contempt and Vincent's request to lower his support payments continued for several years. During the pendency of those motions, Laura received a partial judgment for alimony arrearages. Also during this time, Vincent filed for chapter 13 bankruptcy twice; both proceedings were dismissed. The motions at issue here were

eventually tried in a series of proceedings between December 2014 and February 2015. In the end, the trial court refused to lower Vincent's support payments, and it decided in favor of Laura on his contempt motion against her. But the trial court's judgment concluded that Vincent had committed contempt by dissipating his assets to avoid paying his divorce-settlement obligations; it fined him and sentenced him to a term in jail, the latter to be suspended as long as he complied with the court's schedule of payment obligations.

Laura brought this suit in Texas, specifically pleading claims for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (TUFTA) against Vincent and Trina and claims for civil conspiracy against all five defendants. Vincent, Trina, and the Alexicon Defendants filed motions for summary judgment, and the trial court granted all three motions, resulting in a take-nothing judgment for Laura. She appeals.

### VINCENT'S MOTION FOR SUMMARY JUDGMENT

In her first issue Laura contends that the trial court erred in granting Vincent's motion for summary judgment. The motion sought judgment on all claims against Vincent on the basis of the affirmative defenses of res judicata and collateral estoppel. When a defendant moves for summary judgment on an affirmative defense, he must prove all the essential elements of his defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam). The trial court's order granting Vincent's motion did not state a particular ground on which the motion was granted, so we must affirm the summary judgment if either of his defensive grounds are meritorious. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

**Vincent's Defense of Res Judicata**

Res judicata prevents the relitigation of a claim that has been finally adjudicated as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). Vincent argues that Laura's claim for fraudulent transfer is an attempt to relitigate her claims tried in in the Oklahoma contempt proceeding. To prove his defense, Vincent was required to offer summary judgment evidence establishing (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Joachim*, 315 S.W.3d at 862.

*Fraudulent Transfer*

Laura challenges the third element of his proof. She argues that Vincent failed to carry his burden to prove that her fraudulent transfer and conspiracy claims are barred because they were litigated in the Oklahoma contempt proceeding or because they should have been litigated in that proceeding. We agree.

In the Oklahoma proceeding, Laura defended against Vincent's effort to reduce his support payments by offering evidence that he had dissipated his assets to avoid paying obligations under the parties' divorce decree. In his motion, Vincent pointed to the Oklahoma pretrial order, which catalogued the parties' evidence and witnesses for the hearing on the competing motions. The order establishes that Laura planned to offer—and she did offer—evidence concerning Vincent's transfers of his assets to his partners in Alexicon and to his second ex-wife, Trina. Laura also offered testimony of an expert witness, who testified concerning Vincent's depletion of his assets through these purportedly fraudulent transfers.

–4–

Laura responded to Vincent's motion arguing that the Oklahoma proceeding employed the evidence concerning Vincent's property transfers only to determine what amount was owed to Laura pursuant to the parties' agreed divorce settlement after he claimed to be insolvent. The evidence she offered, including the expert testimony, went solely to an explanation of how Vincent became insolvent; it was never offered as evidence of an independent claim by Laura. Indeed, when Vincent's counsel objected to Laura's expert's use of the term "fraudulent transfer," the objection was sustained, and the trial judge ultimately stated the expert's testimony would serve only to show how Vincent became insolvent. Laura's motion also relied on the Oklahoma judgment itself to support her argument, noting that it does not address any element of a TUFTA violation and does not adjudicate any liability under that statute for Vincent or Trina. Instead, the Oklahoma judgment recites clearly that what was tried in the proceedings at issue here were contempt applications and Vincent's motion to modify his child support.

Laura argues that this appeal is analogous to *In re J.G.W.*, 54 S.W.3d 826 (Tex. App.—Texarkana 2001, no pet.). In the original divorce proceeding of the divorce and custody proceeding in that case, the father offered evidence that the mother and her then-boyfriend had "absconded with" the parties' children before trial. *Id.* at 829. In a subsequent proceeding in which the mother attempted to modify custody of the children, the father brought tort claims against the mother and her now-husband for intentional infliction of emotional distress, interference with child custody, and civil conspiracy based on their conduct in taking the children. *Id.* at 830. The tort defendants sought summary judgment based on res judicata, and the claims were dismissed. *Id.* at 832. On appeal, the Texarkana Court of Appeals concluded that references to the facts underlying the tort claims in the original divorce proceeding were evidence supporting the court's unequal property division, not adjudication of the tort claims. The court stressed that the father received no recovery attributed to the tortious conduct. *Id.* at 833. In our case, Laura offered evidence of the manner in

which Vincent became insolvent; she received no recovery for any fraudulent transfer. We agree with the *J.G.W.* court that these facts do not support the defense of res judicata.

We conclude that Laura did not attempt to bring a fraudulent transfer claim in the Oklahoma proceeding. Instead, her claim was for enforcement of the parties' divorce settlement agreement. Her rights within that agreement inured long before the transfers she complains of in this suit. And the remedies she seeks in this suit were not available then. Most importantly, the Oklahoma judgment recites that trial was had "on the parties' mutual citations for contempt and [Vincent's] motion to modify his child support," and those motions are the claims that were resolved within that document. We also conclude that Laura's fraudulent inducement claim was not litigated in the Oklahoma contempt proceeding for purposes of res judicata in this proceeding.

Laura argues further that her claim for fraudulent transfer could not have been brought in the Oklahoma contempt proceeding, and we agree. In her summary judgment response, Laura focused on the absence of Trina as a necessary party for any fraudulent transfer claim against Vincent, and she alleged that Trina was "likely not subject to the jurisdiction of any Oklahoma court." Vincent's motion made no attempt to establish that Trina was amenable to the jurisdiction of the Oklahoma court had Laura attempted to join her.

In this Court, the parties debate the issue of the Oklahoma court's jurisdiction over Trina, but as the summary judgment movant, it was Vincent's burden to establish that Laura could have brought her fraudulent transfer suit in Oklahoma. Courts have held that the transferor and the transferee are both necessary parties to a fraudulent transfer suit in bankruptcy cases. "[A] determination of liability under TUFTA is a two step process: first, a finding that a debtor made an actual fraudulent transfer or a constructive fraudulent transfer; and, second, recovery for that fraudulent transfer, or its value, from the transferees." *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 767 (S.D. Tex. 2013). It is undisputed that Trina was the transferee of the Alexicon stock, the

purportedly fraudulently transferred asset. Therefore, absent Trina's presence in the Oklahoma proceeding, a TUFTA issue could not be completely resolved. Vincent failed to carry his burden to prove, as a matter of law, that Laura could have brought her fraudulent transfer claim in the Oklahoma contempt proceeding.

A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and, through the exercise of diligence, could have been litigated in a prior suit. *Barr*, 837 S.W.2d at 631. Here, we agree again with the reasoning of our sister court in *J.G.W.* When the mother and her husband argued in that case that the father could have brought his tort claims in the original divorce proceeding, the court reasoned that its determination rested upon whether the tort claims were part of the same subject matter as the custody dispute. 54 S.W.3d at 833. The court concluded that the claims, while likely a consideration in custody decisions, were not "essentially connected" to the custody proceeding, which had as its primary objective the best interests of the children. *Id.* The father's personal injury claims were only ancillary to those best interests. *Id.* In the Oklahoma proceeding in our case, Vincent's challenged transfers were probative of how he came to be insolvent, but ancillary to the ultimate determination of what he owed Laura pursuant to their divorce decree. As *J.G.W.* concludes, the transactional approach Texas takes to res judicata does not bar such ancillary matters in a later suit. *Id.*

We conclude that Vincent failed to offer summary judgment evidence establishing that Laura's claim for fraudulent transfer is based upon the same claims that were raised or could have been raised in the Oklahoma contempt proceeding.

*Civil Conspiracy*

Vincent's motion lists three pages of "undisputed facts" averring that Laura had litigated any matter for which either party proposed or offered evidence at the Tulsa trial. It does not analyze those facts in support of his res judicata defense to Laura's claim for conspiracy. The motion fails

to prove that the Tulsa court decided any issue relating to the elements of a conspiracy: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Nor did Vincent attempt to prove that Trina should—or could—have brought that conspiracy claim in the contempt action. He did not offer evidence that the purported conspirators could have been brought into a contempt proceeding or into any Oklahoma court. In her response to the motion, Laura again raised the question of whether conspiracy defendants other than Vincent could be made parties. She also argued that an Oklahoma family court was neither the most convenient nor the proper venue to resolve civil conspiracy claims based on tortious Texas conduct.

Vincent argues in this Court that he should prevail on the conspiracy claim because Laura's underlying claim for fraudulent transfer is barred. But we have concluded that Vincent failed to establish that Laura's fraudulent transfer claim was either litigated in Oklahoma or could have been litigated there and thus is barred by res judicata. He argues next that her conspiracy claim is barred because she is only a general creditor, lacking a lien on the property transferred by Vincent to other appellees. But Vincent did not raise this argument in his motion, and a summary judgment cannot be affirmed on grounds not expressly set out in the motion. *Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

We conclude that Vincent failed to establish as a matter of law that Laura's claim for civil conspiracy is based upon the same claims that were raised or could have been raised in the Oklahoma contempt proceeding.

We sustain Laura's first issue to the extent it contends the trial court erroneously granted Vincent's summary judgment motion on the ground of res judicata.

**Vincent's Defense of Collateral Estoppel**

Laura argues that Vincent's motion was insufficient on the issue of collateral estoppel because it failed to identify specific issues that Vincent contended had been litigated and were accordingly barred by this defense. She specially excepted and objected to the motion as vague and ambiguous in this regard. The trial court overruled her exceptions and objections. She re-urges the argument of vagueness on appeal. A trial court has broad discretion in ruling on special exceptions. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007).

> Vincent's motion on collateral estoppel—in its entirety—states:

> Collateral estoppel is issue preclusion. *Barr v. Resolution Trust Corp*. 837 S. W.2d 627, 629 (Tex. 1992). It prevents a party from relitigating an issue that it previously litigated and lost. *Quinney Elec. Inc. v. Kondos Entertainment. Inc.*, 988 S.W.2d 212, 213 (Tex. 1999) (per curiam). The elements of collateral estoppel are: (l) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Bonniwell v. Beech Aircraft Corp*. 663 S.W.2d 816, 818 (Tex. 1984).

While citations to the law are necessary in a motion for summary judgment, they are not sufficient standing alone to prove an affirmative defense. Vincent identifies no specific issues that he claims are barred by collateral estoppel. He points to no summary judgment evidence establishing specific facts that were fully and fairly litigated earlier, let alone how those facts were essential to an earlier judgment. We conclude that the trial court abused its discretion in overruling Laura's special exception. In the absence of identification and analysis of specific issues in the motion, a summary judgment on collateral estoppel cannot stand.

We sustain Laura's first issue to the extent it contends the trial court erroneously overruled her special exception to Vincent's summary judgment motion on collateral estoppel.

**Conclusion on Vincent's Motion for Summary Judgment**

We reverse the trial court's order granting Vincent's motion for summary judgment and remand Laura's fraudulent transfer and conspiracy claims against him for further proceedings.

–9–

**THE ALEXICON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In her second issue, Laura challenges the summary judgment granted to the three Alexicon Defendants. She argues that it was error to grant their motion on conspiracy grounds. She argues further that she pleaded a claim against these defendants for fraudulent transfer, which was not included in their motion, and which therefore survives summary judgment.

**Conspiracy Claim**

The Alexicon Defendants filed a combination traditional and no-evidence motion for summary judgment on Laura's conspiracy claim. Their motion argued that longstanding Texas law holds that a creditor cannot bring suit for conspiracy to engage in a fraudulent transfer of property in the absence of a security interest or lien on the property transferred, citing *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806 (Tex.1979). *Stonecipher* holds that absent such a secured interest, the claimant is no more than a general creditor, and a conspiracy claim is not available to her. *Id.*

The Alexicon Defendants' traditional summary judgment evidence included Vincent and Laura's Settlement Agreement and the Alexicon Defendant's interrogatories to Laura and her responses. The relevant interrogatory asked:

> If you contend that you hold, or have held since your divorce from Vincent Wiemer, any ownership or security interest in the Alexicon Stock Shares, describe in detail the basis for such a contention. As part of your answer, identify all documents evidencing such an interest.

Laura's response concerning the stock, in its entirety, was:

> Plaintiff enjoyed a security interest in VW's assets, including the Alexicon stock, by vi[rt]ue of the judgments awarded in the Oklahoma divorce.

We disagree with Laura's understanding of the awards given her by the Oklahoma court. The initial divorce settlement awarded their Alexicon stock to Vincent; Laura was not given a security interest in the stock by that agreement. And the judgment resolving the contempt motion in her

–10–

favor granted Laura only "a lien against all real property owned by [Vincent] until [the contempt purge fee] is paid in full." But stock is personal property, not real property. *Evans v. Prufrock Restaurants, Inc.*, 757 S.W.2d 804, 806 (Tex. App.—Dallas 1988, writ denied). We conclude that Laura's interrogatory answer does not evidence that she owned a secured interest or lien in the Alexicon stock.

Laura's response to the Alexicon Defendants' motion did not attempt to raise a material issue of fact concerning her ownership of a security interest in the stock. Instead, she challenged the movants' legal argument that *Stonecipher* foreclosed her conspiracy claim. But the cases she cites establish—at most—that a claim exists in Texas for conspiracy to commit fraudulent transfer. *Chu v, Hong,* 249 S.W.3d 441, 444 (Tex. 2008). But *Stonecipher* acknowledges such a claim exists for a secured creditor; it only disallows the conspiracy claim when the creditor is merely a general creditor, as Laura is.

The parties' briefs in this Court largely echo their legal arguments in the motion and response. Laura continues to rely on *Chu* and its comments about conspiracy to commit fraudulent transfer. She does not cite a case that conflicts with *Stonecipher*'s rule requiring a secured interest to urge the claim. And the Alexicon Defendants cite an even more recent case than *Chu* that is resolved according to this *Stonecipher* rule, *Clapper v. American Realty Investors, Inc.*, 2015 WL 3504856 (N.D. Tex. 2015). In *Clapper*, the trial court dismissed the plaintiffs' conspiracy claims "because plaintiffs have plausibly alleged only that they were general creditors as to the allegedly fraudulently transferred property, and because, under Texas law, a general creditor cannot recover damages for conspiracy to commit a fraudulent conveyance." *Id.* at *5.

We conclude that the trial court correctly granted summary judgment to the Alexicon Defendants on Laura's conspiracy claim.

–11–

### Fraudulent Transfer Claim

Laura argues on appeal, and for the first time, that she pleaded a claim for fraudulent transfer against the Alexicon Defendants. She asserts that their failure to include this claim in their motion means that the claim survives summary judgment.

Laura relies on a series of paragraphs spread throughout her petition. The first group are four paragraphs found under the heading "Second Cause of Action[:] Civil Conspiracy," which allege the conspiracy. Laura stresses the initial paragraph in this section that "incorporates all preceding paragraphs for all purposes," noting that the preceding paragraphs—which are pleaded under the heading "First Cause of Action[:] Violations of the Uniform Fraudulent Transfers Act"--allege fraudulent conspiracy against Vincent and Trina. Laura then points to six scattered paragraphs found under the heading "Background & Relevant Facts," relating conduct of the Alexicon Defendants as conspirators with and transferees from Vincent and Trina. Laura alleges that these paragraphs suffice to state a claim for fraudulent transfer against the Alexicon Defendants.

The Alexicon Defendants respond that Laura's amended petition did not give them notice of that claim. We agree. Their motion for summary judgment specifically stated that it was directed at all of Laura's claims; her response to the motion did not inform the trial court or the movants that they had failed to address a fraudulent transfer claim she had pleaded against them.

Nor do we find fair notice of a fraudulent transfer claim in the amended petition itself. The pleading identifies—with Roman numerals and headings—four "causes of action." The Alexicon Defendants correctly point out that the third and fourth section are not stand-alone causes of action: exemplary damages and attorney's fees are in the nature of remedies. The first cause of action, fraudulent transfer, is clearly urged against Vincent and Trina. The second is urged against the "Conspirators," defined in the amended petition to include Vincent, Trina, Kitch, Strait, and

Alexicon. When a petition lists specific causes of action, we cannot reasonably infer another cause of action unless the petition gives fair notice that the plaintiff is seeking to recover under that cause of action. *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993). Fair notice "looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000). We conclude that incorporating by reference, as it was used in Laura's amended petition, was insufficient to put the Alexicon Defendants on fair notice that Laura intended to plead the fraudulent transfer claim against them as well as the two defendants against whom it was specifically pleaded.

We also reject Laura's argument that the factual allegations in her pleading *could* support a claim of fraudulent transfer against the Alexicon Defendants. We do not reach a conclusion on whether the facts pleaded could support such a claim. A plaintiff chooses the claims she makes, and she is not required to bring every claim that could be supported by the facts in the case. The Texas Supreme Court has said, in the context of class actions, that "Courts do not dictate the strategies parties must follow in litigation nor do they instruct litigants which claims or defenses they should, or should not, bring. . . . The tactical and strategic decisions to structure the lawsuit are theirs; the implications of their actions are established by law." *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 697 (Tex. 2008). Regardless of whether Laura could have brought a fraudulent transfer claim against these defendants, we conclude that she did not do so in her amended petition. Thus, she has no claim against them that has survived summary judgment.

We overrule Laura's second issue.

### Conclusion on the Alexicon Defendants' Motion for Summary Judgment

We affirm the trial court's order granting summary judgment in favor of the Alexicon Defendants on Laura's civil conspiracy claim, the only substantive claim she urged against them.

## TRINA'S MOTION FOR SUMMARY JUDGMENT

In her third issue, Laura argues the trial court erroneously granted Trina's motion for summary judgment on all of Laura's claims against her.

### Res Judicata and Collateral Estoppel

Trina's motion, like Vincent's, relied on the affirmative defenses of res judicata and collateral estoppel. Most of her argument is intended to establish that she was in privity with Vincent and so should be able to rely upon his litigation of fraudulent transfer in Oklahoma. However, we have already concluded that Laura did not try a claim for fraudulent transfer in Oklahoma. If the claim was not tried against Vincent, it could not have been tried against the non-party Trina, even if we assume—without deciding—that Trina was in privity with him.

Trina's collateral estoppel defense is also based largely on her arguments of privity with Vincent. But, like Vincent before her, Trina does not identify any specific issues that she alleges were fully litigated in Oklahoma. Instead, she refers here to Laura's "claims of fraudulent transfer" that were purportedly fully litigated. Collateral estoppel is issue preclusion, not claim preclusion. *Barr*, 837 S. W.2d at 629. It can only succeed with specific identification and analysis of specific issues. Neither is present in Trina's motion.

Trina also argues that the Oklahoma judgment is entitled to full faith and credit in Texas. We certainly agree. However, Trina argues that that judgment supports her defenses of res judicata and collateral estoppel because it is final and the Oklahoma trial court had jurisdiction to render it. Again, we have concluded that the Oklahoma judgment does not represent adjudication of a claim for fraudulent transfer. Accordingly, the Oklahoma judgment, given full faith and credit, does not support Trina's defenses or her motion.

We conclude that Trina has not established as a matter of law that Laura's fraudulent transfer claim is barred by res judicata or collateral estoppel.

## Civil Conspiracy

Trina's motion, like the Alexicon Defendants' motion, relied on the rule from *Stonecipher* to defeat Laura's conspiracy claim. In fact, she relied on the trial court's ruling on the Alexicon Defendant's motion to establish that Laura was only a general creditor and thus could not bring a conspiracy claim against them. We agree that the same principles govern Trina's motion and conclude that she is entitled to summary judgment on the conspiracy claim.

## Conclusion on Trina's Motion for Summary Judgment

We affirm the trial court's order granting Trina summary judgment on Laura's civil conspiracy claim. We reverse the trial court's order granting summary judgment on Laura's fraudulent transfer claim against Trina, and we remand that claim to the trial court for further proceedings.

/Jason Boatright/
JASON BOATRIGHT
JUSTICE

170370F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

LAURA WIEMER, Appellant

No. 05-17-00370-CV     V.

VINCENT HANS WIEMER, TRINA
RACHELLE WIEMER, ALEXICON,
INC., ROBBIE D. STRAIT, AND
DOUGLAS KITCH, Appellees

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-04442-2015.
Opinion delivered by Justice Boatright.
Justices Myers and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** the trial court's order granting Vincent Hans Wiemer's motion for summary judgment and **REMAND** Laura Wiemer's fraudulent transfer and civil conspiracy claims against him for further proceedings.

We **AFFIRM** the trial court's order granting summary judgment in favor of Alexicon, Inc., Robbie D. Strait, and Douglas Kitch on Laura Wiemer's civil conspiracy claim.

We **AFFIRM** the trial court's order granting Trina Rachelle Wiemer summary judgment on Laura Wiemer's civil conspiracy claim. We **REVERSE** the trial court's order granting summary judgment on Laura Wiemer's fraudulent transfer claim against Trina Rachelle Wiemer, and we **REMAND** that claim to the trial court for further proceedings.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 13th day of August, 2018.