T. W. MORRIS v. T. W. HOUSE AND ANOTHER.

1—Though in strict accuracy of language it may be true that the trustee of a fraudulent and void assignment does not hold *under it* the effects attempted to be thus assigned, or the funds arising out of such effects, yet he holds such effects or funds in his own wrong, and the law makes him the trustee of an implied trust for the benefit of the creditors of the assignor; and the effects or funds in the hands of the trustee can be reached either by the process of garnishment or by a creditor's bill.

2—A judgment creditor who, by process of garnishment, seized such effects or funds, was entitled to have the whole of them applied to his demand, to the exclusion of other creditors who were not in a position to pursue the funds or effects.

ERROR from Washington. Tried below before the Hon. R. E. B. Baylor.

The opinion shows the facts of this case.

*Sayles & Bassett,* for the plaintiff in error.

*J. D. & D. C. Giddings,* for the defendants in error.

WALKER, J.—At the Spring term of the District Court of Harris county for the year 1856, House and Mather recovered a judgment against D. B. Madden. Execution was issued and returned not satisfied. On the necessary affidavit of T. W. House, one of the plaintiffs, a writ of garnishment issued and was served upon T. W. Morris, the appellant. Morris filed his answer, denying that he had any money or property of any kind in his hands belonging to Madden. This answer was controverted by the affidavit of House; and Morris being a resident of Washington county, the case was taken to that jurisdiction. Morris admits in his answer that he holds, under an assignment to him by Madden, about $4000 in notes and book accounts, and refers to the deed of assignment, making it virtually a part of his answer, together with the schedules of

assets and debts which were delivered to him by Madden. There was included in the assignment 900 acres of land in Washington county, excepting 200 claimed as a homestead by Madden, and also a tract of 225 acres previously sold, leaving but 475 to pass to the assignee. A power of attorney accompanied the trust, authorizing the assignee, Morris, to sell the property for cash, or on six months' credit, and to collect all debts due Madden, by suit or otherwise, and to pay, first, the expenses incident to the execution of the trust, with ten per cent. commission to the assignee, and then to pay to the creditors of Madden a *pro rata* dividend, provided that they should, within thirty days after the execution of the assignment, file with Morris a full release of all their claims against Madden, and only such as would so relieve him to participate in the dividend, and whatever balance of the proceeds of the property remained in the hands of Morris (after the trust should be thus administered) was to be paid over to Madden on his representations. After the filing of this answer, the plaintiffs below amended their petition and attacked the trust deed on the ground of fraud, alleging that the assignment was made to hinder, delay and defraud the creditors of Madden, and especially the plaintiffs. The garnishee, Morris, demurred to this petition, and the court sustained the demurrer, and what was the precise scope given to this demurrer does not fully appear from the record, but it would seem that the court still considered the plaintiffs as contesting the assignment on the ground of fraud, and accordingly ordered two special issues to be tried, which were as follows:

1. Was the trust deed executed by Madden to Morris for the purpose of hindering or delaying the creditors of said Madden in the collection of their just debts?

To this the jury say, "We answer, it was."

2. What amount of money or effects of said Madden has the garnishee, Morris, in his hands at this time?

The jury answer, $1189.

Morris was examined as a witness, and admitted that between

the service of the writ of garnishment and the trial he had collected from Madden's effects the sum of $1189.

Upon the special findings of the jury, the court entered judgment for the plaintiffs for $1189, and awarded execution against the parties for costs made by them, respectively; and the defendant Morris took a bill of exceptions. A motion for a new trial was made and overruled, and notice of appeal given.

It is now insisted by the appellant that the judgment of the court was erroneous, because, after the jury found that the assignment was fraudulent and void, there could be nothing in his hands under it, and he should have been discharged. This objection is certainly not well taken. Appellant acknowledged that there was $1189 in his hands, and if he did not hold it under the deed, he still held it in his own wrong; and the law made him the trustee of an implied trust, which could be reached in his hands by the creditors of Madden, and in the very manner which it was proposed, by garnishment, or it might have been done by a creditor's bill.

But it is further insisted that the submission of the second special issue to the jury was erroneous; that striking out the first amended petition left no issue to try, and the court could not have thus proceeded; but we find upon the record a second amended petition, which directly and expressly charges that Morris had $4,000 of Madden's means in his hands, and it must have been upon this allegation that the court submitted to the jury to find how much means Morris had in his hands belonging to Madden. But if the deed had been left intact, as appellants claim it was, then it appears that only one creditor, whom Morris himself represented, had come in and accepted his *pro rata* dividend and given a release; and that his claim only amounted to about sixty dollars. The ninety days given for presenting the claims had gone by, and all the property, except expenses and commission, by the terms of the deed reverted to Madden, and whatever was Madden's belonged to his creditors; and it is not easy to understand why the

plaintiffs below were satisfied to take a judgment for $1189, when their judgment, principal and interest, amounted to at least $9000. There being no other creditors in a position to share the fund, they would have been entitled to a judgment against Madden for the whole fund in his hands, and the court might have awarded execution, and the sheriff have levied on it and sold it, for by the terms of the deed after thirty days had elapsed no creditor could come in, and Morris held the property for Madden's use.

The whole transaction bears strong evidences of fraud, and it is properly said that fraud vitiates whatever it touches. All the legal questions raised by the appellant are settled by the cases of Adkins v. Watson, 12 Tex. R., 199, and Howerton v. Holt, 23 Tex. R., 51.

We find nothing in the record on which to reverse the judgment of the District Court. The judgment is affirmed with damages, and cause remanded.

Affirmed with damages.