**ESTATE of L. W. STONECIPHER, Deceased, Petitioner,**

v.

**ESTATE of Thomas BUTTS, Deceased, et al., Respondents.**

No. B–8379.

Supreme Court of Texas.

Dec. 19, 1979.

Rehearing Denied Jan. 16, 1980.

Adams & Browne, Gilbert T. Adams and Richard J. Clarkson, Beaumont, for petitioner.

Louis Dugas, Jr., Orange, for respondents.

CAMPBELL, Justice.

L. W. Stonecipher, now deceased, sued the Estate of Thomas Butts, deceased, Irene Butts Babington (Thomas' former wife) and Elmer Newman for damages arising from an alleged conspiracy to prevent the collection of a judgment lien, for fraudulent concealment of a cause of. action, and to collect a judgment. The trial court rendered judgment non obstante veredicto that Stonecipher take nothing. This judgment was affirmed by the Court of Civil Appeals. 579 S.W.2d 27 (Tex.Civ.App.). We reverse the judgments of the courts below.

In 1950 Stonecipher obtained a judgment against Thomas and Irene Butts for $21,-080.36. Executions were issued on May 1, 1951 and returned nulla bona by the Orange County sheriff. Only $5,000.00 was paid on the judgment and discovery proceedings were had which consisted of a bill of discovery, interrogatories and depositions. Thomas testified he conveyed 160 acres of Louisiana land to his banker, Elmer Newman, shortly before the trial for $6,000.00 cash. He used the cash to pay off loans to the bank and for living expenses. Neither he nor his wife, Irene, had assets subject to execution. Irene testified she did not have, either before or after the trial, assets subject to execution. Newman testified he paid Thomas for the 160 acres in $20.00 bills and that he knew of no other assets owned by Thomas or Irene. Stonecipher did not extend the judgment and it became dormant in 1961.

In 1970 Stonecipher discovered that Newman conveyed the 160 acres back to Thomas in 1967. He also discovered that Irene owned 80 acres of Louisiana land which she conveyed to Newman the day before her post-judgment deposition was taken. Newman deeded the 80 acres back to her on the same day he deeded the 160 acres back to Thomas. These deeds recited the consideration as being in settlement of the property rights on divorce of Thomas and Irene. Their divorce was granted on the same day the deeds were executed.

Stonecipher brought this action against Thomas, Irene and Newman in 1971. He alleged that a conspiracy of these defendants prevented him from collecting the judgment lien and that the fraudulent acts of the defendants tolled the running of the limitations of Article 3773.[1]

The Court of Civil Appeals held Stonecipher did not have a cause of action against Newman for conspiracy to prevent the collection of a judgment lien. It reasoned that because the judgment was legally dead there was no recoverable damage suffered as a result of the conspiracy. That court relied on *Lallathin v. Keaton,* 198 Okl. 312, 178 P.2d 101, 103 (1947), which stated:

> The gist of this action is not the conspiracy, but the damage suffered by the plaintiff as a result of the conspiracy. . . . Since the judgment had become legally dead prior to the time the present action was commenced, there was no recoverable damage suffered as a result of the alleged conspiracy.
>
> There is no distinction, in legal effect, between a tort action in fraud and deceit . . . to prevent the collection of a judgment legally dead and a tort action in conspiracy, as here, to prevent the collection of such a judgment. (citations omitted)

The Court of Civil Appeals adopted the rationale and holding of the *Lallathin* court as its own. We disagree.

There are no Texas cases precisely in point. However, courts throughout the United States have long recognized a cause of action for damages for a post-judgment conspiracy to prevent the collection of a judgment lien. The Supreme Court of the United States, in *Findlay v. McAllister,* 113 U.S. 104, 5 S.Ct. 401, 28 L.Ed. 930 (1884), held that a judgment creditor has a cause of

---

1. All statutory references are to Vernon's Texas Civil Statutes Annotated.

action against those who dispose of goods of the debtor, seized by the sheriff to satisfy a judgment or against one who prevents the seizure of the debtor's goods on execution.

In the *Findlay* case, a circuit court of Missouri by mandamus commanded a county court to levy and collect a special tax to pay Findlay's judgment against the county. The collection of the taxes was thwarted by McAllister and others by physically resisting the collection and threatening violence to those who attempted to collect the tax. Findlay brought suit alleging a conspiracy to prevent the collection of his judgment. The defendants contended that Findlay did not have such a property interest in the taxes as to entitle him to maintain an action for conspiracy. The Court stated that the collection of these taxes was for the specific purpose of paying Findlay's judgment and he therefore had a legal interest in the money to be raised by the special tax, which the law gave him, in the property and its sale, and he suffered a direct damage from the acts of the defendants by which a sale was prevented. This case further held that a general creditor has no interest in or lien upon the property of the debtor and therefore no wrong has been done him if the debtor, in conspiracy with others disposes of the debtor's assets.

The prevailing authority on civil liability for conspiracy to aid a debtor to evade payment of his debts is expressed in 2 A.L.R. 287–293. It is there stated:

Merely to conspire to commit a wrong is not actionable, and imposes no civil liability upon the members of the conspiracy. To enable the injured person to maintain an action for damages based upon a conspiracy, it must be shown that the defendants have been guilty of the commission of a wrongful act in violation of some right of the complainants, and that damage has resulted as a proximate consequence of the wrongful act complained of. Applying this general doctrine to the question under consideration, it is clear that a mere general creditor without a lien has no interest in the debtor's property, and hence is not legally injured by any conspiracy with the debtor to aid him in disposing of his property in order to evade the payment of his financial obligations, and cannot maintain an action based upon such conspiracy.

A creditor with a lien has a right of action against persons who interfere with the property of his debtor upon which he has a lien, so as to prevent the levy or sale by the sheriff to satisfy his judgment.

In *Le Gierse et al. v. Whitehurst,* 66 Tex. 244, 18 S.W. 510 (1886), it was held that a general creditor has no right in or lien upon property of the debtor and therefore suffers no damages if the debtor's property is conveyed to others to evade payment. The damage sustained by the creditor is in being deprived of an opportunity to make a levy and this damage is too remote. The loss suffered is not of a right, but of a chance to secure a right.

■■■ The gist of a cause of action for conspiracy is damage from the commission of wrong which injures another and not the conspiracy itself. *Schlumberger Well Surveying Corporation v. Nortex Oil and Gas Corporation,* 435 S.W.2d 854 (Tex.1968). The damage in a conspiracy for fraudulent conveyance is the interference with or loss of a property right or lien of the creditor in the debtor's property. We therefore, hold that a judgment creditor, with a lien on the property made the basis of a cause of action for conspiracy to prevent the collection of such lien, may recover such damages as result from the conspiracy.

■■■ The land, made the basis of Stonecipher's cause of action, is located in Louisiana. Stonecipher had a judgment against Thomas and Irene. Butts from Orange County and the judgment was abstracted only in that county. He had no lien on the Louisiana land. Thus, as to that land he was no more than a general creditor and does not have a cause of action for conspiracy to prevent the collection of a judgment lien.

Stonecipher next urges that fraud or concealment tolls the limitations of Article 3773.[2] There are no Texas cases and few outside where fraudulent concealment of assets was alleged as a basis for avoiding the limitations governing the issuance of executions, or revival of judgments, or ground of action for fraud causing loss of legal remedy on the judgment. In these cases the courts have refused relief, generally on the ground that the judgment creditor had failed to show sufficient diligence to discover the debtor's assets, though usually the court has at least intimated that if real diligence had been shown on the part of a judgment creditor, such relief would have been granted. See 104 A.L.R. 214.

In a similar case, Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807 (1879), the Court said "It will be observed, also, that there is no averment that during the long period over which the transaction referred to extended the plaintiff ever made, or caused to be made, the slightest inquiry in relation to either of them . . . concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent injury. There must be reasonable diligence; and the means of knowledge are the same thing as knowledge itself."

In Dole v. Wilson, 39 Minn. 330, 40 N.W. 161 (1889), the plaintiff, through equity, was seeking to have land appropriated to the satisfaction of his judgment after the judgment had expired by lapse of time. The court held that equity will not extend the statutory limitation upon the life and enforceability of the judgment, if by the plaintiffs' own neglect, the judgment has remained unpaid until it ceased to exist as a legal obligation.

We do not agree with the Court of Civil Appeals that Lallathin v. Keaton, 198 Okl. 312, 178 P.2d 101 (1947), is controlling. That case, in reliance upon Thomas v. Murray, 174 Okl. 36, 49 P.2d 1080 (1935), recognizes the rule that one guilty of fraudulent acts cannot escape liability for such acts by saying the fraud could have been discovered with ordinary care. The court then states that this rule is not applicable because the Oklahoma statutes set the standard of care and measures which a judgment creditor must take to keep his judgment alive and no exceptions will be made.

Texas statutes also provide a method for keeping judgments alive. Article 5532[3] and Article 3773. However, we do not take the very limited view that no exceptions may be made to these statutes. Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531 (1940), cited by the Court of Civil Appeals for the proposition that no exceptions would be made to these articles was not a fraud case. There the judgment stated that no execution would issue until 180 days after the date of the judgment. Action to revive the judgment was brought within ten years after the 180 days had elapsed but more than ten years from the date of the judgment.

■ Our courts have consistently held that fraud vitiates whatever it touches, Morris v. House, 32 Tex. 492 (1870), and that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence. Quinn v. Press, 135 Tex. 60, 140 S.W.2d 438 (1940). Reasonable diligence is a question of fact. Ruebeck et al. v. Hunt ex ux., 142 Tex. 167, 176 S.W.2d 738 (1943).

2. Article 3773. Dormant judgment. If no execution is issued within ten years after the rendition of a judgment in any court of record, the judgment shall become dormant and no execution shall issue thereon unless such judgment be revived. If the first execution has issued within the ten years, the judgment shall not become dormant, unless ten years shall have elapsed between the issuance of executions thereon, and execution may issue at any time within ten years after the issuance of the preceding execution.

3. Article 5532. A judgment in any court of record, where execution has not issued within twelve months after the rendition of the judgment, may be revived by scire facias or an action of debt brought thereon within ten years after date of such judgment, and not after.

We hold that the fraud shown here will toll the limitations of Articles 5532 and 3773. Therefore, Stonecipher's action to enforce the judgment against the Estate of Thomas Butts, deceased, and Irene Butts Babington will not be barred upon a finding of fact that reasonable diligence was exercised in attempting to discover assets of the judgment debtors.

The judgments of the courts below are reversed and the cause is remanded to the trial court for further proceedings.

GARWOOD, J., not sitting.