Ray **HARDING**, Appellant,

v.

George C. **LEWIS**, Appellees.

No. 13-02-411-CV.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Aug. 27, 2003.

John S. Warren, Warren, Drugan & Barrows, Corpus Christi, for Appellant.

Arnold Gonzales Jr., Kathryn F. Green, Kleberg Law Firm, Kathryn Snapka, Snapka & Turman, L.L.P., Corpus Christi, for Appellee.

Before Justice RODRIGUEZ, CASTILLO and WITTIG.[1]

## OPINION

Opinion by Justice WITTIG.

Appellee, George C. Lewis, claims an equitable exception to dormant judgment rules under the Texas Civil Practice and Remedies Code. Appellant, Ray Harding, contends that two trial court findings are factually insufficient. The court found that Harding's fraudulent conduct sought to evade execution of the judgment against him. Additionally, it found that Lewis used reasonable diligence in attempting to locate assets. We affirm.

### I.

Lewis secured a judgment in 1989 against Harding. The judgment was abstracted November 15, 1989. In December of that year, a writ was issued and later executed on personal property belonging to Harding in March 1990. An alias writ of execution was issued March 15, 1990. No further writs were issued until June 26, 2002, although Lewis requested a second abstract of judgment in December 1999. The clerk delivered the abstract to Lewis in April 2000. In the meantime, another asset search was conducted in October 1999. Harding requested a partial release of the judgment lien in June 2000 in order to sell purported homestead property. Lewis sent additional asset discovery in September 2000.

In the interim Harding had moved once again. His attorney refused to disclose his address and stated he did not represent Harding. The record suggests otherwise, showing the same attorney represented Harding at least in June 2000, in March 2002, at the hearing, and on this appeal. In fact, Harding's counsel wrote a letter in March 2002 demanding release of the judgment for the same client he denied representing.

In 1999, before the judgment was dormant, Harding transferred six acres to his brother, who transferred the acreage back in October 2001. This deed was not recorded until April 4, 2002, beyond the statutory period of time to revive a dormant judgment. See TEX. CIV. PRAC. & REM.CODE § 31.006 (Vernon 1997).

### II.

The record does not contain findings of fact and conclusions of law.[2] In a nonjury

---

1. Former Justice Don Wittig assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

2. The order recites that Harding engaged in

trial, where findings of fact and conclusions of law are neither filed nor timely requested, it is implied that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex.1992). When, as in this case, a reporter's record is brought forward, these implied findings may be challenged by factual or legal sufficiency points, the same as jury findings or a trial court's findings of fact. *Id.* at 84 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989)); *State v. One (1) Residence Located at 1204 North 12th Street, Alamo, Tex.*, 907 S.W.2d 644, 645 (Tex. App.-Corpus Christi 1995, no writ). If the evidence supports the implied findings, we must uphold the judgment of the trial court on any theory of law applicable to the case. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

When reviewing a challenge to factual sufficiency of the evidence, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). After considering and weighing all the evidence, we set aside the factual finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Because we are not the fact-finder, we may not substitute our own judgment for that of the trier of fact, even

if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex.1998). The amount of evidence necessary to affirm a judgment is far less than the amount necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

The judgment of a trial court granting an equitable remedy should not be disturbed in the absence of a showing that the court abused its discretion or, in other words, that an inequity resulted. *Foust v. Hanson*, 612 S.W.2d 251, 253 (Tex.Civ. App.-Beaumont 1981, no writ).

### III.

█ By his first issue, Harding argues the finding that his conduct "prevented" Lewis from satisfying the judgment is against the great weight and preponderance of the evidence. Harding argues *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806 (Tex.1979), discussed below, is distinguishable. He contends the evidence does not show how his conduct in conveying the six-acre tract to his brother in 2000 "prevented" Lewis from satisfying his judgment.[3] Lewis maintains Harding brother's testimony that Harding wanted to "hide it from a lawsuit," coupled with other facts, is sufficient. First, Harding's brother never paid Harding for the six acres, and Harding continued to pay for the property by automatic withdrawals. Harding threatened his brother if he were to later disclose the concealment. Harding also admitted knowing of the judgment-dormancy deadlines. While Harding had the property transferred back to him in October 2001, the deed was not record-

---

efforts to conceal assets in an attempt to evade efforts to locate and execute upon non-exempt assets. It further recites that Lewis exercised reasonable diligence in attempting to locate assets and the conduct of Harding tolled any limitations periods during the time of concealment and fraud.

3. As noted, the order recited that Harding "engaged in efforts to conceal assets in an attempt to evade the efforts" of Lewis to locate and execute on non-exempt assets.

ed until April 2002, after the period had run to revive a dormant judgment.

In *Estate of Stonecipher*, Stonecipher obtained a judgment against Butts. *Estate of Stonecipher*, 591 S.W.2d at 807. The judgment was partially satisfied in 1951; discovery consisted of a bill of discovery, interrogatories, and depositions. *Id.* Butts had testified he conveyed 160 acres to his banker before the original trial to pay his debts. The judgment became dormant in 1961, and it was not until 1970 that Stonecipher discovered that the banker had conveyed the 160 acres back to Butts. *Id.* The action was brought in 1971. *Id.* The court stated: "Our courts have consistently held that fraud vitiates whatever it touches, *Morris v. House*, 32 Tex. 492 (1870), and that limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by exercise of reasonable diligence. *Quinn v. Press*, 135 Tex. 60, 140 S.W.2d 438 (1940)." *Id.* at 809.

Harding also cites *Le Gierse v. Whitehurst*, 66 Tex. 244, 18 S.W. 510 (1886) for the proposition that the loss of a chance to enforce a judgment may be too remote. Rather, *Whitehurst* deals with a bulk sale and duty of a purchaser to inquire. *Id.* at 510. The high court held: "If Barnwell was solvent, the sale might still be fraudulent; but, unless he was insolvent, the duty of inquiry by the purchaser would not necessarily arise from the character of the sale." *Id.* We fail to see the materiality of this authority.

Harding argues Lewis did not prove that he could not otherwise satisfy the judgment, and thus the conveyance to his brother did not affect Lewis's ability to collect. Harding also argues that he bought ten acres prior to the conveyance of the six acres and did not conceal its whereabouts. However, our review of the record indicates that the six acres were acquired prior to the ten acres and were

claimed by Harding to be his homestead. Then Harding bought the ten acres, claimed it as homestead, and transferred the six acres to his brother for no apparent consideration.

Harding does not point to any evidence in the record to support his argument that other property was overlooked by Lewis and subject to execution. Rather, by a series of purchases, claims of homestead, and re-conveyances, the record indicates a studied course in collection avoidance by Harding. Both direct and circumstantial evidence support the trial court's conclusion. There was the "round trip" transfer, brother to brother, and Harding's failure to record the return deed until after the judgment became dormant. Direct testimony stated Harding was hiding assets. The court's conclusion of fraud is well supported. *See Estate of Stonecipher*, 591 S.W.2d at 809. Furthermore, we therefore cannot conclude that the evidence supporting the finding is so weak that the finding is against the great weight and preponderance of the evidence and clearly wrong and unjust. *See Maeberry v. Gayle*, 955 S.W.2d 875, 878 (Tex.App.-Corpus Christi 1997, no pet.) (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996)). Harding's first issue is overruled.

■ Harding's second issue is at first blush closer. He correctly argues that *Estate of Stonecipher* requires a second test of reasonable diligence. *Estate of Stonecipher*, 591 S.W.2d at 809. He argues a lack of reasonable diligence. After the seizure and sale of Harding's equipment in April 1990, no legal discovery was conducted until September 2000. This was six months after the judgment initially became dormant. *See* Tex. Civ. Prac. & Rem.Code § 34.001(b) (Vernon 1997). As Harding also notes, a second abstract of judgment was requested in December 1999, and received in April 2000, though apparently not

filed. From 1989 to 1999, Lewis's attorney testified she sent an investigator to the Nueces County Courthouse to research Harding's holdings at least once. Deed records, but not court records, were reviewed. Harding's mother's house and obituaries were monitored. A business-assets search was requested through a Virginia company, which however, was not introduced into evidence. It was after March 15, 2000 that written "legal" post-judgment discovery was again conducted.[4] After Harding's attorney claimed not to represent him "in this matter," Lewis conducted a web search. Though three attempts to serve Harding with written discovery were made between September 2000 and April 2002, none were fruitful. One set of discovery sent to Harding's supposed Corpus Christi address was returned marked "Wrong Ray Harding." Finally, Harding's brother contacted Lewis's attorney, one month after the statutory right to revive the dormant judgment expired, on March 15, 2002. *See id.* § 31.006. Thus, Harding concludes, the finding of reasonable diligence to locate assets is against the great weight and preponderance of the evidence.

Lewis counters that the second prong of *Estate of Stonecipher* applies to the duty of the judgment creditor to discover the fraud, not merely what asset searches were conducted. We agree. First, a careful reading of *Estate of Stonecipher* indicates its holding to be that the damage for fraudulent conveyance is the interference with or loss of a property right or lien. *Estate of Stonecipher*, 591 S.W.2d at 808. Fraud vitiates whatever it touches, and limitations begin to run from the time the fraud is discovered or could have been discovered by the defrauded party by the exercise of reasonable diligence. *Id.* at

809. The opinion, however, complicates itself by concluding that fraud will toll the limitations period and the action "will not be barred upon a finding of fact that reasonable diligence was exercised in attempting to discover assets of the judgment debtors." *Id.* at 810.

Two more recent cases are helpful. In *Shah v. Moss,* 67 S.W.3d 836 (Tex.2001), the supreme court held: "Fraudulent concealment tolls limitations until the plaintiff discovers the fraud or could have discovered the fraud with reasonable diligence." *Id.* at 841 (citing *Velsicol Chemical Corp. v. Winograd,* 956 S.W.2d 529, 531 (Tex. 1997)). Similarly, in *S.V. v. R.V.,* 933 S.W.2d 1 (Tex.1996), the high court held: "Fraud, we have said, in and of itself prevents running of the statute of limitations." *Id.* at 6 (most citations omitted, but notably referencing with approval *Estate of Stonecipher,* 591 S.W.2d at 809); *see Borderlon v. Peck,* 661 S.W.2d 907, 908–09 (Tex.1983) (a party will not be permitted to avail itself of the protection of a limitations statute when by its own fraud it has prevented the other party from seeking redress within the period of limitations) (citing *Estate of Stonecipher,* 591 S.W.2d at 809). This is consistent with the general concept of fraud. Normally, "fraud vitiates all transactions, and if [some action is taken] for a fraudulent purpose to carry out a fraudulent scheme, the [action] is a void act, and of no force or effect whatsoever. Equity will compel fair dealing, disregarding all forms and subterfuges and looking only to the substance of things." *Libhart v. Copeland,* 949 S.W.2d 783, 794 (Tex.App.-Waco 1997, no writ).

We conclude that whether the test of reasonable diligence is applied to either the discovery of the fraud or the effort to

---

**4.** We do not agree with Harding that reasonable diligence necessarily encompasses only "legal" or court annexed discovery.

discover non-exempt assets, the trial court's finding was not against the overwhelming weight of the evidence so as to be clearly wrong. *See Pool,* 715 S.W.2d at 635. The fraud was not discovered until the brother approached Lewis in April 2002.[5] The brother testified Harding tried to hide assets, and there is little or no evidence to the contrary. Lewis undertook both private and court-sanctioned asset discovery on multiple fronts beginning again in 1999 through 2002, until the fraud was discovered. The motion to enforce judgment was filed almost immediately, in May 2002.

Reasonable diligence is ordinarily a question of fact. *Ruebeck v. Hunt,* 142 Tex. 167, 176 S.W.2d 738, 740 (1943). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Ellis,* 971 S.W.2d at 407. Harding fails to carry his heavy burden to show that the evidence supporting the finding is so weak that the finding is against the great weight and preponderance of the evidence and clearly wrong and unjust. *See Maeberry,* 955 S.W.2d at 878. Harding's second issue is overruled.

The order reviving the prior judgment signed June 16, 1989 is affirmed.

---

5. There is neither an argument nor evidence we reviewed to suggest that Lewis reasonably could have discovered the fraudulent transfer before the brother came forward.