

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0018-23

**CONTINENTAL HERITAGE INSURANCE COMPANY,
AGENT PAT KINNARD, D/B/A PAT KINNARD BAIL BONDS, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S MOTION FOR REHEARING
AFTER OPINION ON DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY**

**KELLER, P.J., delivered the opinion for a unanimous Court.**

Are civil filing fees part of the court costs that a bonding company[1] must pay if a bond is forfeited? The answer to that question is complicated. It is "yes," except when a statute exempts the State from liability for a particular filing fee, unless another provision requires a civil defendant to pay the fee if the State prevails. After our opinion on original submission, Appellant (the surety

---

[1] Or in some cases, a criminal defendant.

in this case) filed a motion for rehearing. We grant the motion for rehearing, withdraw our previous opinion, and substitute this opinion in its place.[2]  Although one of Appellant's arguments affects a portion of our reasoning, our holding remains unchanged.

## I. BACKGROUND

### A. Bond Forfeiture and Costs

Darrell David was indicted for unlawful possession of a firearm by a felon.  David failed to appear at a trial setting, and a judgment nisi was entered for the forfeiture of a $10,000 bond.   On October 9, 2020, a final judgment of forfeiture was signed, forfeiting the bond and requiring the payment of $100 interest,  $396 in court costs, and any reasonable and necessary costs incurred by the county for the return of the criminal defendant.  The clerk's bill of costs, issued the same day, itemized the following:

| | |
|---|---|
| JUDICIAL SALARY FEE | 42.00 |
| CLERK'S FEE | 50.00 |
| COURT REP SERV FEE | 15.00 |
| LAW LIBRARY | 20.00 |
| BAILIFF'S FEE | 20.00 |
| APPELLATE FUND | 5.00 |
| STATE JUDICIAL FEE | 50.00 |
| DISPUTE MEDIATION | 15.00 |
| RECORDS PRESERVATION | 10.00 |
| DC ARCHIVE FEE | 10.00 |
| COURT HOUSE SEC FEE | 5.00 |
| RECORDS MGT & PRES | 5.00 |
| STATE INDIGENCY FEE | 10.00 |
| RECORDS MANAGEMENT | 5.00 |
| CIVIL COURTS BLDG IM | 15.00 |
| ST ELECTRONIC FILING | 30.00 |
| INTEREST ON BONF | 100.00 |
| CLERK'S FEE - MISC | 8.00 |

---

[2]  *See Diamond v. State*, 613 S.W.3d 536, 538 (Tex. Crim. App. 2020) for the same type of disposition.

| | |
|---|---|
| CERTIFIED MAIL | 76.00 |
| COURT PERS. TRAINING | 5.00 |

This list of items totaled $496.

On October 26, 2020, the surety (Continental Heritage) filed a motion to correct costs. The motion contended that the collection of civil filing fees was not authorized in bond forfeiture proceedings. It identified specific fees it claimed it should not have to pay, which were most of the fees in the bill of costs. The motion contended that authority to dispute costs was conferred by Code of Criminal Procedure article 103.008.[3]

The parties litigated the issue before the trial court. The State took the position that the trial court lacked jurisdiction to revise costs under Article 103.008 and also argued that the costs were legitimate. The surety took the position that the trial court had jurisdiction to address the costs and that it should have to pay only some of the court costs, which the surety believed totaled $94. The trial court ruled that it had jurisdiction to address the issue of court costs, but it denied the surety's motion to revise the costs.

On November 10, 2020, the surety filed a notice of appeal.

**B. Appeal**

The court of appeals concluded that civil filing fees were court costs that could be assessed in a bond forfeiture proceeding.[4] In arriving at this conclusion, the court relied on our decisions in

---

[3] *See* TEX. CODE CRIM. PROC. art. 103.008(a) ("On the filing of a motion by a defendant not later than one year after the date of the final disposition of a case in which costs were imposed, the court in which the case is pending or was last pending shall correct any error in the costs.").

[4] *Continental Heritage Ins. Co. v. State*, Nos. 05-20-00928-CV, 05-20-00929-CV, 05-20-00930-CV, 05-20-01005-CV, 05-20-01006-CV, 2022 WL 17038175, *2-3 (Tex. App.—Dallas November 17, 2022) (not designated for publication).

*Dees v. State*[5] and *Safety Nat'l Cas. Corp. v. State*[6] and on its own earlier decision in *Ranger v. State*.[7]

## II. ANALYSIS

### A. Construction of Statutes and Rules

A court must construe a statute in accordance with the plain meaning of its text unless the text is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended.[8]  In determining plain meaning, we may resort to standard dictionaries, and we apply the canons of construction.[9]  If called upon to look beyond the plain meaning of the text, we look initially to statutory history, which narrowly involves looking at prior versions of the statute.[10]  If we need to look further in an extra textual analysis, a variety of other factors can be considered, including the object sought to be attained by the statute, the legislative history, and the consequences of a particular construction.[11]  When construing a court rule, we can consider extra textual factors even if the text of the rule is not ambiguous or does not lead to absurd results, but we nevertheless

---

[5]  865 S.W.2d 461 (Tex. Crim. App. 1993).

[6]  305 S.W.3d 586 (Tex. Crim. App. 2010).

[7]  *Continental Heritage*, 2022 WL 17038175, at *2-3 (citing *Dees*, *Safety Nat'l*, and *Ranger v. State*, 312 S.W.3d 266 (Tex. App.—Dallas 2010, pet. dism'd, untimely filed)).

[8]  *In re Smith*, 665 S.W.3d 449, 460 (Tex. Crim. App. 2022); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[9]  *Dunham v. State*, 666 S.W.3d 477, 484 (Tex. Crim. App. 2023).

[10]  *Ex parte Moon*, 667 S.W.3d 796, 803 (Tex. Crim. App. 2023).  We need not address whether TEX. CODE CRIM. PROC. art. 1.026 would affect our analysis since that provision became effective only on January 1, 2021, after the judgment, imposition of court costs, and notice of appeal in this case.  *See* Acts 2019, 86th Leg., R.S., Ch. 469 (H.B. 4173), Sec. 1.01, eff. January 1, 2021.

[11]  *Franklin v. State*, 579 S.W.3d 382, 386 (Tex. Crim. App. 2019).

attempt to effectuate the plain language of a rule unless there are important countervailing considerations.[12]

### B. Jurisdiction

The State continues to maintain that a surety cannot use Article 103.008 to challenge court costs. We need not address the applicability of Article 103.008 because the record otherwise shows jurisdiction and authority to address the surety's court-costs challenge. Except as otherwise provided by Chapter 22 of the Code of Criminal Procedure, bond-forfeiture proceedings "shall be governed by the same rules governing other civil suits."[13] And appeals in bond forfeiture proceedings are likewise "regulated by the same rules that govern civil actions where an appeal is taken."[14] In civil cases, a trial court retains plenary power to modify a judgment within 30 days after it is signed.[15] The surety filed its motion to correct costs within the trial court's period of plenary power, so the trial court was empowered to address it. Moreover, if a motion to modify the judgment is timely filed, the losing party in a civil case has 90 days from the date the judgment is signed to file a notice of appeal.[16] The notice of appeal was filed well within the 90 day period. Both the trial court and the court of appeals had jurisdiction to address the surety's court-costs complaint.

### C. Merits

#### 1. *Filing-Fee Liability in Civil Cases*

---

[12] *Williams v. State*, 603 S.W.3d 439, 445 (Tex. Crim. App. 2020).

[13] TEX. CODE CRIM. PROC. art. 22.10.

[14] *Id.* art. 44.44.

[15] TEX. R. CIV. P. 329b(d); *Mitschke v. Borromeo*, 645 S.W.3d 251, 265 (Tex. 2022).

[16] TEX. R. APP. P. 26.1(a)(2).

Many of the court costs in a civil case are fees due upon filing.[17] Because the civil plaintiff files the lawsuit, he pays the filing fee at the time the lawsuit is filed unless an exemption applies.[18] If the plaintiff wins, then he can recover those costs from the civil defendant.[19]

But certain governmental-entity plaintiffs are exempt from having to pay filing fees up-front. Civil Practices and Remedies Code § 6.001 says that a listed governmental entity "may not be required to file a bond for court costs incident to a suit filed by" it.[20] An Attorney General Opinion construing this provision has explained that "the term 'bond' for court costs is synonymous with 'security' for court costs"[21] and that "filing fees are merely security for costs, so that advance payment of such may not be required" of a listed governmental-entity.[22] One of the listed governmental entities is "a county of this state."[23] The statute does not define specifically who can act for the "county," but there is, in another section of the same statute, an exclusion from the up-

---

[17] *See* TEX. R. CIV. P. 145(a) ("'Costs' mean any fee charged . . . including, but not limited to, filing fees . . ."). *See also e.g.*, TEX. GOV'T CODE §§ 51.317, 51.708, 51.851 (2020); TEX. LOCAL GOV'T CODE §§ 133.151, 133.152, 133.154, 291.008 (2020).

[18] *See supra* at n.16. *See also* TEX. R. CIV. P. 142 ("The clerk shall require from the plaintiff fees for services rendered before issuing any process unless filing is requested pursuant to Rule 145 of these rules.").

[19] TEX. R. CIV. P. 131 ("The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided.").

[20] TEX. CIV. PRAC. & REM. CODE § 6.001(a).

[21] Tex. Atty Gen. Op. DM-459, 1997 Tex. AG LEXIS 160, *6 (1997) (quoting Tex. Atty Gen. Op. MW-447A, 1982 Tex. AG LEXIS 163 (1982)).

[22] *Id.*, 1997 Tex. AG LEXIS 160, at *3 (quoting Tex. Atty Gen. Op. MW-447A (construing prior version of statute using the word "security")).

[23] TEX. CIV. PRAC. & REM. CODE § 6.001(b)(4).

front exemption rule for extraordinary writs filed by district and county attorneys.[24] The fact that district and county attorneys are explicitly excepted in one section suggests that in other lawsuits, district or county attorneys qualify as being "the county" under the statute. And the attorney general opinions construing § 6.001were in response to inquiries by a district attorney and a county attorney, where clerks, sheriffs, or constables were insisting on the payment of fees in advance.[25]

Importantly, § 6.001 "only exempts the state from advance payment of filing fees and other court costs" and "does not exempt it from ultimately paying such costs."[26] So if the State loses, it ordinarily has to pay the filing fees, unless some other statutory exemption applies. Some court-cost statutes exempt the "county" or a "state agency" from paying certain filing fees.[27] But others do not.[28] In one statute codifying multiple filing fees, the State was exempted from only one filing fee—which shows that the Legislature knows how to speak its mind on whether the State is to be exempt from paying a filing fee.[29]

---

[24] *See id.* § 6.001(c) ("Notwithstanding Subsection (a), a county or district attorney is not exempted from filing a bond to take out an extraordinary writ unless the commissioners court of the county approves the exemption in an action brought in behalf of the county or unless the attorney general approves the exemption in an action brought in behalf of the state.").

[25] *See* DM-459, 1997 Tex. AG LEXIS 160, at *1 (County Attorney); MW-447A, 1982 Tex. AG LEXIS 163, at *1 (District Attorney).

[26] DM-459, 1997 Tex. AG LEXIS 160, at *8.

[27] *See* TEX. CIV. PRAC. & REM. CODE § 152.004(b) (2020); TEX. GOV'T CODE §§ 51.317(b-2), 22.2061(c) (2020); TEX. LOCAL GOV'T CODE §§ 291.008(a), 323.023(a) (2020).

[28] *See* TEX. GOV'T CODE §§ 51.317, 51.601, 51.708, 51.851 (2020); TEX. LOCAL GOV'T CODE §§ 133.151, 133.152, 133.154 (2020).

[29] *See* TEX. GOV'T CODE § 51.317(b)(1)-(5) (codifying five different filing fees), (b-2) ("The fee imposed under Subsection (b)(5) does not apply to a filing by a state agency.") (2020).

If the State files a lawsuit and wins, the defendant can be required to pay any filing fees the State would have had to pay if it had lost.[30] But can the defendant be required to pay a fee the State was entirely exempt from paying? We conclude that the answer is "no," except where a statute provides otherwise. Under the Rules of Civil Procedure "costs" mean "any fee *charged* by the court or an officer of the court, including, but not limited to, filing fees . . ."[31] When the State's liability for the fee is deferred, it still makes sense to say it is "charged" for the fee—it is just not required to pay it yet. But if the State is exempt entirely from the fee, then it was not charged the fee, and so it is not a "cost"in the case—unless, of course, the legislature otherwise makes it a cost. One filing-fee statute provides that, if the State prevails in a lawsuit it files, the non-prevailing parties are liable for a certain filing fee the State is exempt from ever having to pay.[32] This shows that the legislature knows how to impose a filing fee the State is exempt from on a defendant if the State wins. Other filing-fee statutes that exempt the State from paying the fee do not include such a provision. The implication is that the legislature did not intend to impose the exempt fee on a losing defendant.

To summarize: The State does not have to pay a filing fee up-front when it files a civil lawsuit (filing fees are deferred), but it is still liable for most filing fees if it loses. The State is exempt from paying some filing fees in a civil case even if it loses. Because those exempt filing fees

---

[30] *See* TEX. R. CIV. P. 131.

[31] TEX. R. CIV. PROC. 145(a) (emphasis added).

[32] TEX. LOCAL GOV'T CODE §§ 291.008(a) ("The county is not liable for the costs"), (b) ("In any civil case brought by the state or a political subdivision of the state in a county court, county court at law, or district court in a county in which the commissioners court has adopted a fee under Subsection (a) of this section in which the state or political subdivision is the prevailing party, the amount of that fee shall be taxed and collected as a cost of court against each nonprevailing party.") (2020).

are never "charged" in the case, a losing civil defendant does not have to pay them—unless a statute specifically says the defendant has to pay them anyway.

### 2. *Application to Bond-Forfeiture Proceedings*

A bond forfeiture proceeding originating from a criminal prosecution is a criminal matter, over which this Court ultimately has appellate jurisdiction.[33] But by statute, rules governing civil actions apply:

> When a forfeiture has been declared upon a bond, the court or clerk shall docket the case upon the scire facias or upon the *civil docket*, in the name of the State of Texas, as *plaintiff*, and the principal and his sureties, if any, as defendants; and, except as otherwise provided by this chapter, the proceedings had therein shall be *governed by the same rules governing other civil suits*.[34]

Construing this statute in *Dees v. State*, this Court held that civil *court costs* may be assessed in a bail bond forfeiture proceeding after entry of the judgment nisi.[35] But in *Safety Nat'l Cas. Corp. v. State*, we held that *appellate filing fees* could not be collected in bond-forfeiture appeals because our predecessor court would have been precluded from assessing such fees due to an 1879 statute restricting that court's collection of civil fees to civil cases.[36] We found *Dees* to be distinguishable because the trial-level civil fee statutes in effect in 1879 included no provision "restricting their application to civil cases."[37]

The surety suggests that it should not pay civil filing fees because the bond forfeiture

---

[33] *Int'l Fidelity Ins. Co. v. State*, 586 S.W.3d 9, 11 n.3 (Tex. Crim. App. 2019).

[34] TEX. CODE CRIM. PROC. art. 22.10 (emphasis added).

[35] 865 S.W.2d 461, 462 (Tex. Crim. App. 1993).

[36] 305 S.W.3d 586, 590 (Tex. Crim. App. 2010).

[37] *Id.*

proceeding is not "filed" but is simply docketed on the scire facias docket. Relying specifically on the "scire facias" language in Article 22.10, the surety argues that the bond-forfeiture proceeding is merely a continuation of the criminal prosecution and not a separate case at all. An amicus brief likewise says that a bond forfeiture proceeding is a "scire facias" proceeding and a mere continuation of the criminal prosecution. The surety also seeks to draw a distinction between court costs and "filing fees." The surety further relies on language in the various filing fee statutes saying that the fee applies only in a "civil case." And the surety says that the word "rules" in Article 22.10 indicates that only the Texas Rules of Civil Procedure, and not civil statutes that might also govern civil suits, apply to bond-forfeiture proceedings. After deducting the filing fees, the surety concludes that it should have to pay only $84 of the $396 in billed court costs.[38]

We reject the surety's and amicus's contention that the bond-forfeiture proceeding is a mere continuation of the criminal prosecution. It is true that a "scire facias" writ is considered a continuation of a proceeding and not a new proceeding.[39] In bond-forfeiture proceedings, the "scire facias writ serves two purposes, one as a citation to the sureties, the other, as the State's pleading."[40] But as we will demonstrate shortly, the "scire facias" writ in a bond-forfeiture proceeding is not a continuation of the criminal prosecution; it is a continuation of the bond-forfeiture proceedings initiated by the judgment nisi that provisionally forfeits the bond.

A "scire facias" writ is defined as "[a] writ requiring the person against whom it is issued to appear and show cause why some matter of record should not be enforced, annulled, or vacated, or

---

[38] The surety concedes it must also pay the $100 in interest.

[39] *Berly v. Sias*, 152 Tex. 176, 179-81, 255 S.W.2d 505, 507-08 (1953).

[40] *O'Clarke v. State*, 138 Tex. Crim. 32, 33, 133 S.W.2d 779, 780 (1939).

why a dormant judgment against that person should not be revived."[41]  In Texas civil law, a "scire facias" writ has been used to revive a dormant civil judgment,[42] to require further proceedings after the issuance of a judgment nisi for contempt,[43] and to require the heirs of a deceased plaintiff to appear and prosecute a previously filed civil suit.[44]  The definition of "scire facias" and its use in Texas civil cases shows why the "scire facias" writ is not a continuation of the criminal prosecution but is a continuation of a separate (though related) bond-forfeiture proceeding.  In a bond forfeiture case, a "scire facias" writ is not used to revive, enforce, annul, or vacate a criminal prosecution or a judgment of conviction in a criminal prosecution.  In fact, a bond can be forfeited before a criminal defendant is ever convicted of the offense for which he has been indicted.[45] And even if bond is forfeited after conviction, the "scire facias" writ in the bond-forfeiture proceedings would have no effect on the conviction.[46]  What "scire facias" is used for is to enforce the judgment nisi in a bond-forfeiture proceeding.  It satisfies the same function as it does in certain contempt proceedings, where a judgment nisi is issued for contempt.  A "scire facias" writ continues the contempt proceeding, not

---

[41] *Scire Facias*, BLACK'S LAW DICTIONARY (11th ed. 2019).  *See also Kubosh v. State*, 241 S.W.3d 60, 62 n.3 (Tex. Crim. App. 2007) ("'Scire facias' means a judicial writ, founded on some matter of record, such as a judgment or recognizance and requiring the person against whom it is issued to appear and show cause why the party bringing it should not have the advantage of such a record.").

[42] *Berly*, 152 Tex. at 179, 255 S.W.2d at 507.  *See also Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 809 n.3 (Tex. 1979).

[43] *Ex parte Pyle*, 134 Tex. 148, 150, 133 S.W.2d 565, 566 (1939).

[44] *Kallam v. Boyd*, 232 S.W.3d 774, 776 n.5 (Tex. 2007) (quoting from then TEX. R. CIV. P. 151).

[45] *See infra* at n.51.

[46] *See id.*

whatever proceeding the contempt arose from.

The "scire facias" procedure is resorted to because any bond-forfeiture proceedings prior to and including the judgment nisi are *ex parte*.[47] "Scire facias" is a mechanism for bringing the sureties into the proceedings in order to enforce the judgment nisi by turning it into a final judgment forfeiting the bond.

And although a bond-forfeiture proceeding *can* be docketed on the "scire facias" docket, Article 22.10 also allows it to be docketed on the civil docket.[48] The discretion to use either docket suggests that how the bond-forfeiture case is docketed is simply a matter of convenience and that, in substance, it is a separate case from the criminal prosecution. This conclusion is further supported by the statutory language making the State the "plaintiff" and the criminal defendant and his sureties the defendants.[49] Furthermore, the Code of Criminal Procedure allows the sureties (or the criminal defendant) to file an answer—something a civil defendant would do after the filing of a civil action.[50] If an answer is not filed, a default judgment can be taken, just as would happen in a civil suit if no answer is made.[51] Also, regardless of what happens in the criminal prosecution, the bond-forfeiture judgment becomes "final" after the trial of the bond-forfeiture issues (or a default judgment), and execution can be had on that judgment as in civil actions.[52] A bond-forfeiture judgment is separately

---

[47] *Hester v. State*, 15 Tex. Ct. App. 418, 420 (1884).

[48] *Supra* at n.33.

[49] *See id.*

[50] *See* TEX. CODE CRIM. PROC. art. 22.11.

[51] *See id.* art. 22.15.

[52] *Id.* arts. 22.14, 22.15.

appealable,[53] and there is a separate "bill of review" proceeding that can be used to attack the judgment as late as two years after it is entered.[54] There is even a limitations period for bringing a bond-forfeiture proceeding—four years.[55]

The fact that the bond-forfeiture proceeding is related to the criminal prosecution does not mean it is not separate. Habeas corpus provides a ready analogy. A habeas corpus action is related to a criminal proceeding being attacked but is nevertheless considered to be a separate action.[56]

The remainder of the surety's contentions turn upon what Article 22.10 means by "rules." Do "rules governing other civil suits" mean only formal, court-promulgated rules such as the Texas Rules of Civil Procedure? Or does "rules" have a more generic meaning that could encompass civil statutes? In *Safety Nat'l*, Judge Meyers wrote in a concurring opinion that "it is only the Rules of Civil Procedure that apply" and that "the Rules of Civil Procedure do not impose filing fees."[57] Under that view, the filing fees are not part of the rules that govern civil suits under Article 22.10 because those fees derive only from statute. But if "rules governing other civil suits" has a broader meaning that includes statutes, then the civil filing fees apply to bond-forfeiture proceedings.

A "rule" can be "an established and authoritative standard or principle; a general norm mandating or guiding conduct or action in a given type of situation."[58] Or a "rule" can be "[a]

---

[53]  *Id.* art. 44.42.

[54]  *Id.* art. 22.17.

[55]  *Id.* art. 22.18

[56]  *Ex parte Sheffield*, PD-1102-20, 2023 WL 4092747, *11 (Tex. Crim. App. June 21, 2023).

[57]  305 S.W.3d at 592 (Meyers, J., concurring).

[58]  *Rule*, BLACK'S LAW DICTIONARY (8th ed. 2004) (definition 1).

regulation governing a court's or an agency's internal procedures."[59]  A modern definition of "rule" in the legal context is "a regulation or guide established by a court governing court practice and procedure."[60]  So the word "rule" can have a broad or a relatively narrow definition.  What "rule" means will depend on the context.  The legislature could have explicitly referred to the Rules of Civil Procedure to make it clear that was its intent, but it did not.  Several other Code of Criminal Procedure provisions explicitly refer to the Rules of Civil Procedure as a whole[61] or to a particular Rule of Civil Procedure.[62]

A look at the statutory history of Article 22.10 makes it clear that its use of the word "rule" includes statutory requirements.  The relevant language, "governed by the same rules governing other civil suits," has been part of Article 22.10 since its enactment in 1965.[63]  And nearly identical language (substituting only "suits" for "actions") has been in a predecessor version of the statute since as early as 1879.[64]

On original submission we pointed out that the Rules of Civil Procedure were adopted in 1941.[65]  We further said that, before that point, any "rules governing civil suits" would have been

---

[59]  *Id.* (definition 2).

[60]  *Rule*, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2000) (definition 8a).

[61]  TEX. CODE CRIM. PROC. arts. 17.11, § 3; 39.025(e); 39.026(g); 59.022(c), (d); 59.023(b); 59.04(I).

[62]  *See id.* arts. 11.072, § 5(a)(3); 17.19(a); 59.04(k); 102.017(b)(6).

[63]  *See* TEX. CODE CRIM. PROC. art. 22.10 (Vernon's 1966).

[64]  *See Safety Nat'l*, 305 S.W.3d at 590 n.31 (quoting from TEX. CODE CRIM. PROC. art. 449 (1879) ("governed by the same rules governing other civil actions")).

[65]  *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 511 (Tex. 2018).

prescribed by statute or by the common law and so, in 1879, the legislature would have understood that the "rules" included statutory requirements. In a motion for rehearing, Appellant contends that our opinion was mistaken in concluding that, before 1941, the only rules governing civil suits were those prescribed by statute or by the common law.[66] Appellant cites sources indicating that formal rules relating to civil actions existed before then, with the adoption of a set of rules when Texas was a republic, another set when Texas became a state, and yet another set in 1877 after the Texas Constitution conferred rule-making power on the Texas Supreme Court.[67] After examining Appellant's sources, we agree that formal rules existed before 1941, but we disagree with Appellant's conclusion that this requires changing our decision.

Though formal rules did exist before 1941, they were considerably less extensive than they are today, and there was a great deal of statutory regulation of civil practice. In 1939, the legislature gave the Supreme Court the power to repeal civil procedural statutes, provided that no substantive law was affected.[68] One of Appellant's own sources remarks that the rules of court that existed at

---

[66] We find Appellant's other contentions in his motion for rehearing to be without merit and reject them without comment.

[67] James W. Paulsen, *Rules of Procedure in Early Texas Courts*, 65 TEX. L. REV. 451 (1986) (republic and early statehood rules); William V. Dorsaneo, III, *The History of Texas Civil Procedure*, 65 BAYLOR L. REV. 713, 715 (2013) (citing *Tex. Land Co. v. Williams*, 48 Tex. 602, 603 (1878)) (referring to rules adopted in 1877).

[68] *See* TEX. REV. CIV. STAT. 1731a, §§ 1 ("In order to confer upon and relinquish to the Supreme Court of the State of Texas full rule-making power in civil judicial proceedings, all laws and parts of laws governing the practice and procedure in civil actions are hereby repealed, such repeal to be effective on and after September 1, 1941. Provided, however, that no substantive law or part thereof is hereby repealed."), 3 ("At the time it files the rules, the Supreme Court shall file with the Secretary of State a list of all articles or sections of the General Laws of the State of Texas, and parts of articles and sections of such General Laws, which, in its judgment, are repealed by Section 1 of this Act.") (1939). *See also* TEX. R. CIV. P. 2 (referring to a "List of Repealed Statutes"); TEX. GOV'T CODE § 22.004 (current provision conferring on Supreme Court "full

the founding of the republic,

> by themselves, do not present a complete picture of the procedural framework within which the Supreme Court of the Republic operated. The Congress of the Republic was involved extensively in the day-to-day business of court operation and prescribed much court procedure by statute.[69]

Similarly, the formal rules during early statehood, before 1877, were relatively sparse.[70] This fact makes it unlikely that a pre-1877 reference to "rules" in civil actions was intended to embrace only the few formal rules that existed.

In fact, the Code of Criminal Procedure of 1856 included a number of provisions worded to specifically require "rules" or practices governing *civil* suits to be followed.[71] One such provision that is not a predecessor to current Article 22.10, but that involved similar subject matter, used substantively the same language.[72] Some of these provisions appear to be gap-fillers where a

---

rulemaking power in the practice and procedure in civil actions, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant.").

[69] Paulsen, 65 TEX. L. REV. at 452.

[70] *Id.* at 464-68.

[71] TEX. CODE CRIM. PROC. arts 88 ("governed by the rules applicable to civil actions"), 412 ("in the manner required in civil actions"), 447 ("for the length of time prescribed for citations in civil actions"), 603 ("under the rules prescribed in civil suits"), 604 ("as directed in civil suits . . . the rules in civil suits shall apply"), 672(6) ("governed by the same rules as those which regulate civil suits"), 673 ("as in civil suits"), 693 ("as in civil suits"), 695 ("as in civil actions"), 701 ("the same as in civil suits"), 734 ("the time required by law . . . in civil actions"), 738 ("the time limited for filing transcripts in civil actions"), 739 ("the same rules which govern appeals in civil actions"), 769 ("rules prescribed in civil cases"), 770 ("same rules of procedure . . . which are prescribed in civil actions"), 772 ("the length of time required for service of interrogatories in civil actions"), 778 ("as provided for depositions in civil actions"), 849 ("prescribed by law in civil actions") (1856).

[72] *Id.* art. 88 (issuing bonds for offenses that were about to occur) ("Actions upon such bonds shall be commenced within two years from the breach of the same, and shall be governed *by the rules applicable to civil actions*, except that the sureties may be sued without joining the principal.") (emphasis added).

provision governing criminal procedure was absent, while others appeared to account for a type of proceedings that was at least quasi-civil in nature.[73]  In any event, these statutes, viewed as a whole, indicate that the legislature was concerned not with following formal civil rules, but with adhering to civil practice.[74]

At least one of those references to "rules" in the 1856 Code of Criminal Procedure necessarily referred to statutes because there were no formal rules at the time on the subject: certain procedures involving depositions.  Article 769 stated, "The rules prescribed in civil cases for taking deposition of witnesses, shall, as to the manner and form of taking and returning the same, govern in criminal actions, when not in conflict with the requirements of this Code."[75] According to one of Appellant's own sources, though, the court rules that existed in 1856 did not prescribe the manner and form of taking and returning depositions.[76]  But civil statutes did.[77]

Even assuming that the 1877 rules were more extensive than their predecessors, there is no reason to believe that the legislature's understanding that the "rules governing civil actions" included statutes had changed.  This is because, until 1941, there was still a great deal of statutory regulation of civil practice.  The legislature would still have had this broad understanding of "rules" when it enacted Article 449 in 1879, the predecessor to our current Article 22.10.

---

[73]  *See supra* at n.71.

[74]  *See id.*

[75]  TEX. CODE CRIM. PROC. art. 769 (1856).

[76]  *See* Paulsen, 65 TEX. L. REV. at 464-68.

[77]  See Revised Civil Statutes of 1879, Arts. 2218, 2219, 2220, 2232 (enacted 1846), 2231 (enacted 1848).

In any event, it is still true, as we explained *supra* and in our opinion on original submission, that the legislature has in other provisions of our current Code of Criminal Procedure specifically referred to the Rules of Civil Procedure when it intended one or more of those rules to apply. If the legislature had intended for bond-forfeiture proceedings to be governed solely by the Rules of Civil Procedure, it could have easily said so, but it did not.

And as we have previously explained, we have already held in *Dees* that civil court costs can be collected in bond-forfeiture proceedings. The Rules of Civil Procedure regulate when court costs are paid, whether security is given for costs, who must pay the costs, and how payment of costs may be enforced.[78] A couple of these rules allow for additional costs to be charged,[79] but in general, the Rules of Civil Procedure do not prescribe costs.[80] So statutory fees are necessarily the source of a large part of court costs. We conclude that trial-level filing fees are part of the court costs that the surety who loses a bond-forfeiture case will have to pay.

### 3. *Liability for Only Some Costs*

But as we alluded to earlier, the surety is not liable for every possible filing fee. The surety has to pay only the filing fees the State would have paid if it had lost, except where a statute nevertheless requires the defendant to pay the filing fee when the State wins. By statute, there are exactly five ways that the State can lose a bond forfeiture case.[81] Under the fifth—subsequent

---

[78] *See* TEX. R. CIV. P. 125, 127, 129, 130, 131, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149.

[79] *Id.* 126 (service in a county other than the one in which the constable or sheriff is an officer), 133 (permitting a court to charge costs on motions).

[80] *See supra* at n.65.

[81] TEX. CODE CRIM. PROC. art. 22.13(a).

incarceration—there is a statutory requirement that the surety pay the court costs, even though it has "won" and does not have to forfeit the bond.[82] But under the first four ways that the State can lose, the State would be liable for the filing fees that it is not exempt from paying. Because liability for those filing fees is simply deferred, the fees are still owed if the State prevails, but because the State prevails, those costs can be taxed to the criminal defendant or his sureties.[83]

As we explained earlier, when the State-plaintiff is exempt altogether from paying the fee, then there is no fee in the case to tax to the defendant, absent a provision saying otherwise. The surety has outlined the various fees and the statutory sections upon which it thinks those fees are based. If the surety's assessment of which fees are derived from which statutes is correct, then the items "law library fee," "appellate fund," "dispute mediation," and "DC archive fee" all appear to be fees that the State is exempt from paying and that the losing defendant is not otherwise required to pay.[84] The State also appears to be exempt from paying the "courthouse security fee," but it appears that the authorizing statute requires the defendant to pay the fee anyway if the State prevails.[85] We make no final determination regarding these fees, but leave the issue to the court of appeals to decide in the first instance.

We also see two fees that might improperly duplicate another fee assessed. The surety has pointed out that the "records preservation" fee of $10.00 derives from Government Code §

---

[82] *Id.* art. 22.13(b).

[83] *See* TEX. R. CIV. P. 131.

[84] *See supra* at n.26.

[85] *See supra* at n.31.

51.317(b)(4), which would be a proper fee.[86] But it notes two subsequent fees in the bill of costs—"records mgt & pres" for $5.00 and "records management" for $5.00—deriving from § 51.317(c)(1) and (2).[87] Subsection (c) does not impose filing fees.[88] Instead, it says where the fee imposed in (b)(4) should be sent, with half going to a county records management and preservation fund and half going to a district-clerk records management and preservation fund.[89] If the three fees are as described, then the two $5 fees duplicate the earlier $10 fee. We leave it to the court of appeals to decide in the first instance if that is in fact the case.

### III. DISPOSITION

We hold that a surety can be liable—and is generally liable—for civil filing fees as court costs in a bond-forfeiture action when the State prevails. But the surety is not liable for a filing fee that the State is entirely exempt from paying unless a statute nevertheless requires a civil defendant to pay the fee if the State prevails. The surety also cannot be required to pay a fee that improperly duplicates a fee already charged. We vacate the judgment of the court of appeals and remand the case for further proceedings consistent with this opinion.

Delivered: January 17, 2024

Publish

---

[86] *See* TEX. GOV'T CODE § 51.317(b)(4).

[87] *See id.* § 51.317(c)(1), (2).

[88] *See id.* § 51.317(c) ("The district clerk, after collecting a fee under Subsection (4), shall pay the fee to the county treasurer, or to an official who discharges the duties commonly delegated to the county treasurer, for deposit as follows . . .").

[89] *Id.* § 51.317(c)(1), (2).